(86 South. 411)

No. 22718.

## NEW ORLEANS TERMINAL CO. v. LUCKNER.

(May 3, 1920. On Rehearing, Nov. 3, 1920.)

*(Syllabus by Editorial Staff.)*

1. Ejectment ⬡16—Petitory action; possession of part under title sufficient for possessory action against trespasser to recover whole tract.

In view of Rev. Civ. Code, arts. 3437, 3498, as to possession, where one has recorded title to several adjoining tracts, each tract being described in the deed thereof with reference to definite frontage on the Mississippi and to other well-known tracts and owners, and as running back to the 80-arpent line, which appears to be well known, his actual possession of all the frontage on the river is sufficient to give him right to maintain a possessory action for the whole against one who has not shown possession, but has merely trespassed in cutting timber, though the land is. unfenced and much of it is swamp.

2. Ejectment ⬡127—Petitory action; plaintiff in possessory action having received timber cut not to be awarded damages.

Demand for damages by plaintiff in a possessory action against a trespasser, who has cut timber, being confined to the value of the timber, and the timber having been seized in the action, and released to plaintiff under agreement that he should have to account for its value if he lost the suit, he, having won it, should not be awarded damages by the judgment.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by the New Orleans Terminal Company against Mrs. Marie Luckner. Judgment for plaintiff, and defendant appeals. Affirmed in part, and in part set aside.

H. W. Robinson, Mark M. Boatner, and Wm. Winans Wall, all of New Orleans, for appellant.

Hall, Monroe & Lemann, J. Zach Spearing, and F. Rivers Richardson, all of New Orleans, for appellee.

DAWKINS, J. This is a possessory action, involving a portion of a certain body of land in the parish of St. Bernard, fronting on the Mississippi river, and running back to the 80-arpent line, as per detailed description in its title deeds, referred to and made part of plaintiff's petition. Plaintiff charges that defendant has trespassed upon its said property by cutting and removing certain of the timber therefrom, and prays judgment in the sum of $2,100, as the value thereof, and that defendant be enjoined from further trespass.

Defendant denies plaintiff's possession, claims ownership and possession for several

years past in herself, asks that plaintiff's demand be rejected, with damages in her favor in the sum of $4,000, on account of the wrongful issuance of the injunction.

There was judgment for plaintiff below as prayed for in the sum of $2,100, quieting it in its possession, and perpetuating the writ of injunction against defendant, her agents and employés. Defendant has appealed.

## Opinion.

Plaintiff's possession is based upon some five separate deeds or acts of transfer, as follows:

(1) From Lafayette Jacks and Mrs. Anna J. McMillan, dated December 7, 1903;

(2) From Louis L. Stanton, December 22, 1903;

(3) From J. M. Couget, December 16, 1904;

(4) From the state of Louisiana, June 22, 1905; and

(5) From the state of Louisiana, June 22, 1905.

The property described in these deeds forms a compact body, having a front of approximately 1½ miles on the Mississippi river (less a small tract towards the front end and fronting near the center upon the river, occupied by the National Cemetery), and running back between lines practically parallel to the 80-arpent line. The different tracts are definitely described by reference to prior acts, maps, plans, and owners of contiguous tracts, not necessary to mention in this possessory action (since admittedly the land claimed by the defendant and on which the timber was cut is within this area). It is further admitted and proved that plaintiff has been in the actual possession of the entire front portion of the property (with the exception of the cemetery tract) east of the 40-arpent line for several years prior to this suit, and has erected thereon docks, elevators, warehouses, etc., costing several millions of dollars, and which possession was taken under its above-mentioned titles, the calls of which run back to the 80-arpent line as stated.

Beginning some distance east of the 40-arpent line, estimated at 15 to 20 arpents from the river, and extending back to the 80-arpent line, the property consists of swamp and overflowed land, subject to periodical overflow, and some of it, perhaps, covered by water the better part of the year. The 242.59 acres claimed by defendant is located in this swamp within the confines of the calls of plaintiff's deeds, between the 40 and 80 arpent lines, and some 12,000 to 15,000 feet from the river.

Defendant derives her title from a source different from that relied upon by plaintiff, but which we deem it unnecessary to mention, inasmuch as the record fails to show any possession in her prior to the cutting of the timber of which plaintiff complains. Plaintiff, by timely objection, prevented the converting of the case into a petitory action.

[1] The sole question in this case, other than the value of the timber removed by defendant, is as to whether or not plaintiff's actual possession of the front portion of the tract, as above mentioned, is sufficient, under the calls of its title deeds, to give it the right to maintain a possessory action for the whole, including that portion upon which the trespass is alleged to have been committed.

Counsel for defendant take the position that, inasmuch as there had been, at the time of the filing of this suit (plaintiff having since fenced the whole tract), no well-defined boundaries, consisting of either natural or artificial monuments, to mark the limits of plaintiff's title as described in its deeds, its possession extended only so far as it actually occupied the land with its improvements, etc.; that the property, back of the 40-arpent line, being swamp and over-

flowed, was not susceptible of possession; and, to hold that one who has possession of a part only of a tract of land, under such circumstances, is the possessor of the whole, would enable such possessor to acquire title by the prescription of 10 years of an unlimited quantity of land, regardless of its physical condition; and that one owning wild land unoccupied would be put to the necessity of constantly watching the public records, in order to prevent other persons, who have acquired in good faith any other tract of land the description of which might include a portion of such wild land, from divesting him of his title by the prescription of 10 years.

This argument would be very plausible, if it were not for the articles of the Civil Code and the many decisons of this court interpreting them. C. C. 3437, 3498; Jones et al. v. Goss et al., 115 La. 926, 40 South. 357; Sallier v. Bartley, 113 La. 403, 37 South. 6; Handlin v. Lumber Co., 47 La. Ann. 404, 16 South. 955; Levy v. Gause, 112 La. 790, 36 South. 684. In the case of Jones v. Goss, supra, the property in dispute consisted of a half section, or 320 acres, and it was held that actual possession of the other half section with title to the whole, was sufficient to support the possessory action as to the whole, including the property in contest. The description consisted merely of the government subdivisions. If possession of 5 acres, with title to 40, as in the case of Railsback v. Keith et al., 142 La. 747, 77 South. 586, or of 320 acres out of 640, as in the case of Jones v. Goss, was sufficient for the purposes of the possessory action, by what rule are we to limit the quantity which may be thus possessed? We do not think that a purchaser who acquires a number of separate tracts (though each forming part of a continuous body of land) from different vendors could, by merely taking possession of the whole or a part of one of such tracts, be said to possess the whole body made up of the several purchases, in any event, where the vendors had not been in actual possession. But in the present case the plaintiff, under its several purchases, went into actual possession, and is now occupying the front or river end of all the tracts which run in parallel strips back to the 80-arpent line; and hence it does not have to "tack on" the possession of its vendors.

Counsel for defendant rely mainly upon the case of Gillard et al. v. Glenn et al., 1 Rob. 159. The syllabus in that case reads:

"Actual possession of a part of a tract of land, with title to the whole is possession of the whole; but the party alleging such possession must show fixed and certain boundaries to the tract, the whole of which he claims by establishing actual possession of a part, otherwise possession of a few acres might be extended to any number, according to the interest of the party."

Quoting from the body of the opinion, the court says:

"It does not appear that any actual survey, according to the judgment of this court, was made by the plaintiffs previous to the defendants taking possession of the land claimed, or for some five or six months afterwards, when the interference was distinctly shown; and it is not pretended that the plaintiffs had any other possession of the places in dispute than that of being the owners of a large tract which included them, the boundaries of which were not at the time specifically fixed."

The decision otherwise discloses that the court found the defendants had gone upon, taken actual possession, and occupied the property in dispute for more than one year prior to the filing of the suit, and that as against this plaintiffs relied upon a judgment of this court in certain other litigation (Maes v. Gillard's Heirs, 7 Mart. [N. S.] 314), in which they had been decreed the owners under certain rights acquired from an In-

dian tribe. It does not appear that the possession which they held was of any part of this last-mentioned tract, i. e., that acquired from the Indians, but the inference is rather strong that it was not.

In the present case, in each purchase by the plaintiff, the tract is described with reference to definite frontage on the Mississippi river and to other well-known tracts and owners, and as running back to the 80-arpent line, which appears to be well known and located on all of the maps and plats introduced by each side. As before indicated, defendant has not shown possession in herself, and we think the record establishes a sufficient legal possession in the plaintiff to maintain the present action against defendant, who for the purposes of this case can be treated in no other light than as a trespasser.

The other cases cited by defendant are easily distinguishable from the present one.

The record reasonably sustains the finding of the lower court as to the value of the timber taken by the defendant and her agents.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.

### On Rehearing.

PROVOSTY, J. [2] The demand of the plaintiff is confined to the value of the timber taken by defendant. The timber cut by defendant was seized in its entirety in this suit, and was released to plaintiff under an agreement that plaintiff should have to account for its value if plaintiff lost the suit, and plaintiff won the suit. No damages, therefore, can be allowed.

The judgment appealed from is set aside in so far as it allows damages, and is otherwise affirmed. Defendant to pay the costs of the lower court; and plaintiff those of the appeal.