McCLUSKEY et al. v. MERAUX & NUNEZ, Inc. *

No. 17029.

Court of Appeal of Louisiana. Orleans.

Feb. 6, 1939.

*Rehearing granted March 27, 1939.

described as follows: "Lot No. 2 of Section 13 containing 70.60 acres; Lot No. 4 of Section 13 containing 40 acres; and Lot No. 3 of Section 24 containing 22.24 acres; all situated in T. 12 S. R. 12 E. of the Southeastern Land District of Louisiana, East of the Mississippi River."

Plaintiffs deraign their title by mesne conveyances from the United States Government which patented the land to Hughes Lavergne in 1844. They allege that Meraux and Nunez, Inc., defendant herein, has caused an ex parte survey to be made of a strip of land three arpents wide through their tract, and has published a plan purporting to show defendant to be the owner of the property in controversy, with the result that a cloud has been cast on plaintiffs' title.

Defendant first filed what was described as an "exception of the possession of defendant" (Act No. 38 of 1908 being a means of trying title to lands when neither claimant is in actual possession). Plaintiffs took a rule to show cause why the exception should not be treated as an answer which was made absolute. Defendant then filed a supplemental answer setting up that the three arpent strip which it claims to own runs through the middle of plaintiffs' property, extending from the river to Lake Borgne, and through Orleans and St. Bernard Parishes.

Defendant's chain of title was traced back to a royal grant by the King of Spain.

It also pleaded the prescription of ten and thirty years.

Following a protracted trial the judge, a quo, rendered judgment in favor of plaintiffs and defendant has appealed.

In order to establish the more ancient title, defendant relies upon an excerpt from Gales & Seaton's Edition of the American State Papers, volume 3, page 592, in which appears a report by Samuel H. Harper, Register of the United States Land Office, dated January 6th, 1821, in the following words:

"No. 168. Louis and Hebas St. Amand claim a tract of land situated in the Parish of St. Bernard, left bank of the Mississippi River, bounded on the upper side by the lands of claimant and below by lands of Bienvenu, containing four arpents front, and a depth to Lake Borgne, being a part of a tract of 10 arpents front, formerly belonging to Louis Regio, six arpents of which have been sold at auction by the

Emmet Alpha, of New Orleans, for appellant.

Brian & Brian, of New Orleans, for appellees.

WESTERFIELD, Judge.

This suit was originally filed under Act No. 38 of 1908, but was subsequently converted into a petitory action. Plaintiffs, Mrs. Elizabeth Raabe McCluskey and Mrs. Edna B. Conner Watt, allege that they are the owners in indivision of three contiguous tracts of marsh lands located in the northeastern part of the Parish of Orleans, south of the richlands, fronting Gentilly Road and about two miles from the St. Bernard Parish line, more fully

United States, with a depth to Lake Borgne. The claimants prove by depositions of witnesses that the whole of this land was originally granted by the Spanish Government and that this land has been cultivated and occupied for thirty years."

Plaintiffs say that this excerpt from the American State Papers cannot be considered as a muniment of defendant's title, since it has no authoritative status, not having been introduced in evidence, to which defendant replies that inasmuch as it is a public document there is no need of introducing it. We have some doubt as to the status of this document, but assuming that defendant is correct, it nowhere appears how the division of the original Regio 10 arpent tract was made or whether the six arpents were severed from the east or west side of the tract.

By reference to a map prepared by George Daugherty, Deputy United States Surveyor, dated March 7th, 1836, known as the "Daugherty Map" and offered in evidence, it would seem that the four arpent tract of St. Amand, which appears to run from the Mississippi River to the lake, does not embrace the property in controversy. It is impossible to say whether the six arpents referred to in the American State Papers lies upon the east or west side of the St. Amand tract. If on the east, though it extended to the lake, it would be embraced within the tract described on the Daugherty map as belonging to Anthony Bienvenu and would not take in the land in litigation. If on the west and if it extended to the lake, the land would be included, but we find by the Daugherty map that the tract adjoining the St. Amand tract on the west does not run beyond the forty arpent line and this land is about four miles further back. The land on the west of the St. Amand tract appears in the name of William Brown on the Daugherty map, and we find that one of the links in defendant's chain is a conveyance by William Brown sometime prior to 1813, but Brown did not have title to any of the land beyond the forty arpent line which definitely appears from a photostatic copy of another extract from the American State Papers in 1812 in volume 2 of Duff & Green's Edition, reading as follows:

"No. 386. William Brown claims a tract of land, situate on the east side of the river Mississippi in the county of Orleans, containing sixteen arpents eleven toisès and three feet in front, with a depth extending back as far as Lake Borgne, and bounded on the upper side by land of J. M. Pintard, and on the lower by land of Chalmet Delino.

"It appears that the front and first depth of forty arpents of this land was actually inhabited and cultivated on the 20th day of December, 1803, and for more than ten consecutive years prior thereof. So much the Board confirm, but reject the claim to the remaining extension of depth."

It appears, therefore, that giving the full effect claimed for it, the confirmation of title in defendant's author by the American State Papers cannot be said to embrace the property in litigation. For the same reason, the argument that the Regio tract having been severed from the Spanish Crown and recognized by the United States cannot be subsequently patented by the United States, is without merit since the identity of the patented property has not been established. There is, therefore, no priority of title in the defendant, from which it results that if the defendant has any title at all, it results from its possession and the running of prescription of ten or thirty years.

In order to acquire the ownership of an immovable by prescription acquirendi causa of ten years, four conditions must concur: 1. Good faith on the part of the possessor. R.C.C. articles 3451, 3479 and 3480. 2. A title translative of property. R.C.C. articles 3474, 3478, 3479, 3483 and 3486. 3. Possession accompanied by the following incidents: (a) as owner—when it shall be sufficient to complete actual possession once begun by the civil possession, provided the civil possession be preceded by corporal possession. R.C.C. art. 3487, and (b) the possession shall be continuous and uninterrupted, peaceable, public and unequivocal; clandestine possession will not suffice. R.C.C. art. 3487. 4. An object which may be acquired by possession. R.C.C. art. 3479.

As appears from the foregoing, the prescription of ten years must, in the beginning, be supported by corporal possession. See, also, Tulane Law Review, Volume 12, Page 608, et seq. It is well settled that for the purpose of the ten year prescription the possession of a part of a tract of land or of a part of a series of tracts or contiguous parcels of land, acquired by the same title, is equivalent to the posses-

sion of all of the land within the boundaries described by the title. R.C.C. arts. 3437, 3498; Eivers' Heirs v. Rankin's Heirs, 150 La. 4, 90 So. 419; New Orleans Terminal Company v. Luckner, 147 La. 967, 970, 86 So. 411.

Defendant relies upon this principle of law and maintains that the case of New Orleans Terminal Company v. Luckner, supra, is decisive of the question of the necessary possession by the New Orleans Terminal Company, one of its authors in title. The Luckner Case held that the New Orleans Terminal Company had been in actual possession of the river front portion of the property involved in that suit, which included the "Kruttschnitt Tract" (a designation given to a tract on the west side of the original St. Amand tract, and appearing under that description for the first time on a map prepared by and entitled Alford's New Orleans Terminal Company Property Map, October, 1912.) According to that map the Kruttschnitt tract measures four arpents front and extends from the Mississippi River to the lake and includes the property in litigation. While it is true that the Luckner Case involved only lands within the eighty arpent line, nevertheless, it must be conceded that the effect of that decision is to confirm the possession of the New Orleans Terminal Company of the entire Kruttschnitt tract unless some other impediment to possession exists. The land in controversy here is situated approximately four miles back of the eighty arpent line. Between the eighty arpent line and this property is a stream known as Bayou Bienvenu. If Bayou Bienvenu is navigable the principle that possession of a part is possession of the whole is inapplicable, because the continuity of possession is interrupted by the bed of a navigable stream which belongs to the State of Louisiana. The title to the beds of navigable bodies of water is vested in the sovereign. Miami Corporation v. State, 186 La. 784, 173 So. 315, certiorari denied, 302 U.S. 700, 58 S. Ct. 19, 82 L.Ed. 541. The title of the State is original and not derivative. If Bayou Bienvenu was navigable in 1812 when Louisiana was admitted to the Union, all of its bed below the high water mark became the property of the State by virtue of its inherent sovereignty. State v. Jefferson Island Salt Mining Company, 183 La. 304, 163 So. 145, certiorari denied, 297 U. S. 716, 56 S.Ct. 591, 80 L.Ed. 1001. A

stream is navigable in law when it is navigable in fact. State v. Jefferson Island Salt Mining Company, supra, and Burns v. Crescent Gun & Rod Club, 116 La. 1038, 41 So. 249. The burden of proof of navigability, vel non, is upon the party to whose advantage it would be to establish the fact. Defendant contends that Bayou Bienvenu was not navigable prior to 1923 when it was enlarged and deepened, and that, therefore, it and its authors in title owned its bed with the result that defendant's title runs unbrokenly from the river to the Gentilly highlands in the rear, several miles beyond Bayou Bienvenu, including the land in dispute. Several witnesses were introduced who testified that it was impossible to operate a pirogue in the Bayou prior to 1923. There is in evidence, however, a governmental survey of Bayou Bienvenu, dated March 15, 1923, which indicates that at the point where it crosses the Kruttschnitt strip, it was, at that time, between sixteen and eighteen feet in depth, and that at a point about a mile east of the Kruttschnitt strip it was one hundred and forty feet wide and twenty feet deep. But the depth or width of the Bayou in 1812 does not appear from any source to be found in the record and the burden of proof rested upon defendant. The failure to establish the fact relied upon to support the principle of the law of possession deprives defendant of all comfort to be derived from the Luckner decision. Evidently realizing this fact, an effort has been made to establish a separate and independent possession of that part of the so-called Kruttschnitt strip north of Bayou Bienvenu. To that end, a number of witnesses were produced for the purpose of showing that the New Orleans Terminal Company and Messrs. Meraux and Nunez, defendant's authors in title, had cut cypress cross-ties and had leased for trapping and grazing purposes some portion of the land. This testimony is not convincing since it appears that cross-ties on this and adjoining lands were cut indiscriminately by other parties on their own initiative and in no way associated with any of defendant's authors in title. There were many trespassers on the land. It also appears that the land was not suitable for the pasturage of cattle as the only place where they might graze was a narrow space on the banks of Bayou Bienvenu, where cattle might come and go at will. In 1926, one of defendant's authors in title, Mr. Sidney Nunez, attempted to fence a part of the

property. The fence posts were far apart and it is doubtful whether there was any wire or other enclosure between the posts. A survey was also made at that time. Be that as it may, however, this was in 1926, and since this suit was filed in 1935, ten years had not run. It has frequently been held that neither the grazing of cattle nor the occasional cutting of timber constitute a possession sufficient to begin the prescriptive period. Sessions v. Tensas River Planting Company, 142 La. 399, 76 So. 816; Industrial Lumber Company v. Farque, 162 La. 793, 111 So. 166. Our conclusion is that neither the defendant nor his authors in title have had corporal possession for ten years prior to the filing of this suit.

What we have said concerning the prescription of ten years with respect to possession applies to the prescription of thirty years because actual corporal possession is necessary for the beginning of the thirty year prescription as well as the ten year prescription, the difference being that in the case of ten years' prescription, once actual possession has been proven, it may be kept running by fictitious or civil possession resulting from a title translative of property. The thirty year prescription requires "external and public signs" to keep the prescription running. R.C.C. arts. 3501 and 3502.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.