### McCLUSKEY et al. v. MERAUX & NUNEZ, Inc.

No. 17029.

Court of Appeal of Louisiana. Orleans.

May 8, 1939.

Writ of Certiorari Denied May 29, 1939.

For former opinion, see 186 So. 117.

Emmett Alpha, of New Orleans, for appellant.

Brian & Brian, of New Orleans, for appellees.

McCALEB, Judge.

A rehearing was granted in this matter because we felt that we had erred in our original opinion when we held that the defendant had the burden of proving that Bayou Bienvenu was a non-navigable stream in order for it to establish a prescriptive title to the land in controversy. For a full statement of the facts of the case, see 186 So. 117.

Counsel for the defendant has also maintained on this rehearing that we were wrong in concluding in our original opinion that the plaintiffs' title to the land was paramount to the title exhibited by his client and he has urged that this alleged error be corrected upon our re-examination of the case. We have decided to investigate this contention.

As previously stated in our original opinion, the plaintiffs are the owners in indivision of three contiguous tracts of marsh land located in the northeast part of the Parish of Orleans, south of the richlands, fronting on Gentilly Road and about two miles from the St. Bernard Parish Line. Their title to this property is deraigned by mesne conveyances from the United States Government under patents granted to Hughes La Vergne in 1844. The location of this property is fully shown on a survey made by George Daugherty, Deputy United States Surveyor, dated March 7, 1836 (known as the Daugherty map) and a subsequent map of township 12 South, Range 12 East, Southeastern District of Louisiana, filed in the office of the Surveyor General of the United States.

The defendant claims that it is the owner of a strip of land 3 arpents wide running through the plaintiffs' tract and that it has a primordial title which it traces back to royal grants made by the King of Spain of land in St. Bernard Parish, fronting the Mississippi River, extending in depth to Lake Borgne. Near the beginning of its chain of title is found an acquisition made by Hebas and Louis St. Amand from Pierre Denis Delaronde, dated April 28, 1817, of a portion of land about 1½ leagues below the City of New Orleans in the Parish of St. Bernard situated on the left bank of the Mississippi River having 22 arpents, 11 toises and 3 feet front by the following depth: "The upper 16 arpents, 11 toises and 3 feet have a double concession and the six arpents on the lower side up to the lake; bounded above by land belonging to Jean Rodriguez and below by lands of Antoine Bienvenu."

This property was subsequently known as the St. Amand plantation. Delaronde, the St. Amands' vendor, acquired the land on February 20, 1817, by sheriff's deed from the widow of Ignace Delino. Delino had previously purchased this property in two separate conveyances. The lower 6 arpents were acquired by him on February 9, 1805, from Charles Antoine de Regio and the upper 16 arpents, 11 toises and 3 feet were purchased by him on June 14, 1813, from Henry Daingerfield, Mrs. Charles Thurston and her sons, Alfred and Edmond. The deed by which Delino purchased from de Regio describes the 6 arpents conveyed as having a depth to the lake whereas the deed to the 16 arpents, 11 toises and 3 feet describes the land as having a depth of a double concession. Daingerfield, Mrs. Thurston and her sons, Delino's vendors to the last mentioned tract, acquired this property from Philip Grimes, Attorney General of the United States, on April 24, 1813, and Grimes had previously purchased it for the United States at sheriff's sale from William Brown, who had obtained recognition by the United States Government of a Spanish grant to the land with a depth to the 40 arpent line. (See extract from the American State Papers of 1812, Vol. 2 of

Duff and Green's edition, quoted in full in our original opinion).

It will be seen from the foregoing that the tract having a frontage of 16 arpents, 11 toises and 3 feet, situated on the upper side of the original de Regio tract, acquired by the St. Amand brothers, had an approved depth to the 40 arpent line in the rear of the land.

In 1821, the St. Amand brothers applied to the Registrar of the United States Land Office for confirmation of their title to the lower 6 arpents of their plantation which they had acquired through successive transfers originating from de Regio. It appears that, when the St. Amands applied for this recognition, they sought confirmation of only the lower 4 arpents of the original 6 arpent tract previously acquired by them and that Samuel H. Harper, Registrar of the United States Land Office, recommended their claim for approval with respect to those 4 arpents which were described as having a depth to Lake Borgne. This is shown by an extract from the American State Papers of 1821, which we quoted in our original opinion and which we set forth again for convenience [186 So. 118]: "No. 168. Louis and Hebas St. Amand claim a tract of land situated in the Parish of St. Bernard, left bank of the Mississippi River, bounded on the upper side by the lands of claimant and below by lands of Bienvenu, containing four arpents front, and a depth to Lake Borgne, being a part of a tract of 10 arpents front, formerly belonging to Louis Regio, six arpents of which have been sold at auction by the United States, with a depth to Lake Borgne. The claimants prove by depositions of witnesses that the whole of this land was originally granted by the Spanish Government and that this land has been cultivated and occupied for thirty years."

An examination of the defendant's chain of title, taken in connection with subsequent surveys of the land belonging to the St. Amands, has been sufficient to convince us that the American State Papers are in error, with respect to the statement contained in the foregoing excerpt to the effect that Louis de Regio owned a 10 arpent tract of land fronting on the Mississippi River with a depth to Lake Borgne, and we are satisfied that de Regio owned only 6 arpents front which he conveyed to Delino and which was subsequently purchased by the St. Amand brothers. The Daugherty map, dated in the year 1836, clearly exhibits that Mr. Daugherty, in making his survey, followed faithfully the confirmations of Spanish grants shown in the American State Papers and that, in considering the land acquired by the St. Amand brothers, he was in error in plotting section 9 of the tract (part of original de Regio Tract) as containing 6 arpents, whereas, in truth and in fact, section 9 contains only 2 arpents. Mr. Daugherty divided the land actually owned by the St. Amands into three sections, numbering them 8, 9 and 10. Section 8, which is on the lower side and bounded by the lands of Anthony Bienvenu, has a frontage of 4 arpents and its depth is extended on the map in the direction of Lake Pontchartrain. In plotting the depth of that section, Mr. Daugherty followed the American State Papers, which had confirmed a grant to the St. Amand brothers for 4 arpents of land extending to Lake Borgne and, on his map, he shows a depth past the 40 arpent line. Adjacent to section 8 on the Daugherty map is found section 9 which, according to the scale, contains 6 arpents front and runs to the 40 arpent line. As we have above pointed out, Mr. Daugherty's belief that section 9 contained 6 arpents front was apparently a mistake, which was brought about through erroneous statement of the American State Papers for, as we will hereafter show, it cannot now be successfully contended that section 9 actually contains more than 2 arpents front which, together with the 4 arpents front as shown in section 8 comprises the total frontage the St. Amand brothers acquired from Delaronde, which title originated in de Regio. It is also to be noted that Mr. Daugherty did not write upon section 9, as shown by his map, the name of the owner of that land and this is evidently due to the fact that he was unable to find in the American State Papers any confirmation of French or Spanish grants to that tract. He also limited its depth to the 40 arpent line. This was due to the absence of a confirmation by the United States showing any recognition of a greater depth.

Adjacent to section 9 on the Daugherty map, and on the upper side thereof, is section 10 which is designated as lands belonging to William Brown from whom, by successive conveyances, the St. Amands obtained title to the 16 arpents, 11 toises and 3 feet. This land is shown to have a depth to the 40 arpent line which is exactly in accordance with the confirmation of the Spanish grant to William Brown as contained in the extract No. 386 of the American State Papers issued in 1812.

With reference to the width of section 9 as shown on the Daugherty survey, a later map, based on surveys of Sulakowski and Grandjean, filed in the Surveyor General's office on May 21, 1873, clearly exhibits that the error contained on the Daugherty map has been corrected and the section is shown thereon as having a frontage of 2 arpents and that this land is claimed by Onezime Debouchel, who is one of the defendant's authors in title.

It is the defendant's contention that section 9 referred to in the Daugherty map, which erroneously comprises 6 arpents front, was acquired by it under a Spanish grant and that this grant has been recognized by the United States Government as having a depth to Lake Borgne.

The point is not well taken. The American State Papers, which recognize the claim of the St. Amand brothers for 4 arpents front running to the lake, cannot be interpreted to mean that the title to the other 6 arpents, supposedly owned by de Regio as part of a 10 arpent tract, had ever been confirmed or was recognized by virtue of the statement contained in the excerpt No. 168 above quoted. Moreover, as we have above remarked, the correct frontage of the tract is 2 arpents and there is nothing before us which would justify a conclusion that it had a depth beyond the 40 arpent line.

Apart from this, the evidence reveals that the Kruttschnitt Tract, upon which the defendant bases its title to the land in dispute, is definitely located within the original Brown Tract of 16 arpents, 11 toises and 3 feet (which has an approved depth to the 40 arpent line). This is clearly shown on a map of Frank H. Waddill, Civil Engineer, who surveyed the property for the New Orleans Terminal Company on January 29, 1912. This map is to be found as an exhibit in the case of New Orleans Terminal Co. v. Luckner, 147 La. 967, 86 So. 411, and was used by Mr. Waddill in that matter in support of expert testimony given by him. A photostatic copy of it has been offered in evidence by the defendant in the instant matter. It is interesting to note, in passing, that Waddill's map shows that section 9 of the Daugherty survey has a frontage of 2 arpents and not 6 arpents.

It is also shown by the testimony of the defendant's expert, Hawkins, and by the survey he made of defendant's property, that the lands in controversy are situated directly behind the original Brown Tract. This fact is further substantiated by a map of the surveyor for the New Orleans Terminal Company, Mr. B. R. Alford, dated October 1912.

It is obvious from the foregoing that the defendant has failed to establish that it has a valid title to the disputed land by virtue of a Spanish grant.

It is contended, however, by the defendant that it has proved a prescriptive title of 10 and 30 years. We find no merit whatsoever in the plea of 30 years prescription and adhere to the conclusions expressed by us in our original opinion where it was fully discussed.

We are also unable to sustain defendant's plea of the 10 year prescription. The title, upon which it relies to establish this prescription, describes the property as follows: "A portion of ground, composed of a strip fronting on the Northside of St. Bernard Shell Road and extending back therefrom between parallel lines (the westerly one of which is the easterly boundary of the tract numbered 9) herein before described 3 arpents or 575.49 feet A.M., more or less, *as far as Lake Borgne;* and an additional portion or strip having a width of 1 arpent or 191.83 feet A.M., front on said road and extending back therefrom between parallel lines to a line 80 arpents distant from the left bank of the Mississippi River, the 3 upper arpents of said portion of ground extending from the Northside of said road *to Lake Borgne* and the one lower arpent thereof extending only to said 80 arpent line; without warranty as to any of said portion of ground between said 80 arpent line and Lake Borgne; being part of the same land which was acquired by Louis L. Stanton from Ernest B. Kruttschnitt by act before A. Goldberg, N.P., March 10, 1903." (Italics ours.)

This property, known as the "Kruttschnitt Tract" was acquired by the defendant from Dr. L. A. Meraux and A. S. Nunez on August 10, 1926. Meraux & Nunez purchased the land on March 12, 1925, from the New Orleans Terminal Company and the latter acquired it from Louis L. Stanton on March 10, 1903. The 3 arpent strip, which the defendant claims runs through the plaintiffs' property, is that portion of the land in the rear of the 80 arpent line. Excluding the survey which was made for the defendant by Mr. Hawkins in October 1927, there is absolutely nothing to show that the boundaries of the 3 arpent strip (past the 80 arpent

line) had ever been designated or described by deed, map, plat, patent or survey. On.the map of Mr. Waddill made in 1912 for the New Orleans Terminal Company, the lines of the 3 arpents have been casually drawn past the 80 arpent line in the direction of Lake Pontchartrain and the same may be said of the map made by Mr. Alford for the New Orleans Terminal Company in October 1912. But no survey has ever been made by the two last mentioned gentlemen of the land in dispute. It is true that Mr. Hawkins, by extending the 3 arpents between parallel lines in the direction of Lake Pontchartrain, has shown that the lands claimed by the defendant run through the property owned by plaintiffs, but it can hardly be said that he was justified in running the lines in the manner indicated by him on his map.

Defendant's title from New Orleans Terminal Company, as well as the prior descriptions of this land, states that the 3 arpents extend to Lake Borgne. A recent United States map of the lands in this vicinity (dated February 20, 1936, and based upon a previous survey of George H. Grandjean, U. S. Deputy Surveyor) discloses that Lake Borgne is east of the land in question whereas Lake Pontchartrain is due north of the property. Mr. Hawkins, in making his survey of defendant's land, has extended the 3 arpents between parallel lines towards Lake Pontchartrain and not in the direction of Lake Borgne. Defendant's title describes the lands as extending to Lake Borgne and, if Mr. Hawkins had followed the description contained in the act, by running his lines in an easterly direction, the land claimed by defendant would not touch plaintiffs' property, which is approximately north of the 80 arpent line in the direction of Lake Pontchartrain.

■ It seems to be well settled in this State that the paper title relied upon by one seeking to establish a 10 year prescription, must reasonably describe the lands contained therein in order for the court to find that possession of a part is possession of the whole. See R.C.C. art. 3479, Albert Hanson Lumber Co. v. Angelloz, 118 La. 861, 43 So. 529; Nelson, Curtis & Nelson v. Bridgeman, 152 La. 190, 90 So. 855; Baldwin v. Arkansas-Louisiana Pipe Line Co., 185 La. 1051, 171 So. 442; and Toerner v. Texas Co., 5 Cir., 70 F.2d 239.

■ In Baldwin v. Arkansas-Louisiana Pipe Line Co., supra, it is said [185 La. ■, 1051, 171 So. 446]: "A deed which fails to describe by legal subdivisions the real estate intended to be sold and makes no reference to any deed, map, plat, patent, survey, or boundary by which the description may be ascertained is void as to third parties for want of description of the thing sold. It is not translative of any specific property and could not form the basis of prescription."

■ In the case at bar, the only description contained in defendant's deed or in the conveyances of its predecessors in title, with respect to the arpents extending beyond the 80 arpent line, is that "the 3 upper arpents of said portion of ground extending from the Northside of said road to Lake Borgne * * *".

Prior to the Hawkins survey (recently made for the defendant), which was subsequent to the acquisition of their title, there had been no other surveys made of the land extending beyond the 80 arpent line, and in defendant's chain of title, the only description of this land is that it has a depth to Lake Borgne. If we assume that the description contained in the acts, which does not designate any particular boundaries, is ample for the purpose of establishing the 10 years prescription, it will be readily seen that the Hawkins survey is erroneous because, instead of extending the lines in the direction of Lake Borgne, Hawkins has run them in a northerly direction or towards Lake Pontchartrain. By this procedure, he has run the strip, claimed by defendant, through the center of plaintiffs' property.

We are of the view that the description of the property claimed by defendant is insufficient to establish a prescriptive title and that, even though we assume otherwise, the land, if properly surveyed according to the paper title, would not embrace the lands owned by plaintiffs. There is therefore no need for us to give further consideration to the question of the navigability of Bayou Bienvenu, which was discussed by us in our original opinion and it is likewise unimportant to discuss other questions raised by counsel for plaintiffs with regard to the defendant's lack of good faith.

For the reasons stated herein and for those given in our former opinion, our original decree is reinstated as the final judgment of this court.

Original decree reinstated.