164 So.2d 84 (1964)
Eugene D. BROUSSARD et al.
v.
The LOUISIANA LAND AND EXPLORATION COMPANY et al.
No. 6140.
Court of Appeal of Louisiana, First Circuit.
April 6, 1964.
Rehearing Denied June 1, 1964.
Writ Refused July 1, 1964.
*85 Eugene D. Broussard, New Iberia, for appellants.
Breazeale, Sachse & Wilson, by Victor A. Sachse, and Paul M. Hebert, Baton Rouge, Milling, Saal, Saunders, Benson & Woodward, by H. H. Hillyer, Jr., New Orleans, Peltier & Peltier, by Donald L. Peltier, Thibodaux, Wiley Lastrapes and William J. Conrad, New Orleans, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
REID, Judge.
This is one of a series of cases involving land on Timbalier Island, Terrebonne Parish, Louisiana, three of which cases are before this Court on appeal on the question of possession. The companion cases Number 5888, Broussard et al. v. Wisner et al. (164 So.2d 99) and Number 5889, Broussard et al. v. Walker et al. (164 So. 2d 95). The procedural distinction between the present case and Nos. 5888 and 5889 is that the latter two cases are before this Court on appeal by the plaintiffs from a judgment maintaining an exception of want of possession filed by the defendants in connection with plaintiffs' action of jactitation, while this case is on appeal by the defendants from a judgment maintaining plaintiffs' action of jactitation. All three of the above mentioned cases were consolidated for trial on the issue of possession, which issue was basic and similar in all cases. For that reason, those issues common to all three cases will be discussed in this opinion, while the facts and issues peculiar to the other two consolidated cases will be discussed in connection with opinions rendered therein.
In order to get a clear understanding of the facts and issues involved in these cases it is felt that a brief summary should be given of all of the various cases originally filed, including those on appeal here and those not on appeal.
The various tracts of land in question are all shown on a stipulated map paraphed "Ne Varietur" by the District Judge and filed in evidence in the case herein, reproduced herewith:
*86 
*87 On October 17, 1955 Phillip J. Daspit et al. filed suit No. 16542 against Edwin S. Broussard, Jr., et al. (plaintiffs herein,) claiming possession of Lot 4, Section 4, T 24 S, R 20 E, and on May 14, 1957 a consent judgment was rendered declaring plaintiffs Daspit et al. as owners of said Lot 4. This case is of importance in that Lot 4 separates the land claimed by the plaintiffs in this case from the land claimed by the plaintiffs in the two companion cases and thus makes the land claimed by plaintiffs in this suit non-contiguous to the land claimed in the other two suits.
On October 19, 1956, Robert W. O'Meara filed proceeding No. 17183 on the docket of the 17th Judicial District Court, Number 5858 on the docket of this Court, against Eugene D. Broussard, et al., wherein O'Meara claimed to be the mineral lessee of Lot 3, Section 4, T 24 S, R 20 E, and asserted his lessors to be the sole and only owners of said property and claimed for himself the sole mineral leasehold rights. The District Court maintained exceptions of want of interest. Plaintiff appealed to this Court and this Court affirmed, but granted a rehearing. This affects the same land that is the subject of suit No. 5888.
On April 24, 1957 Eugene D. Broussard, et al., plaintiffs herein, filed suit No. 17519 on the docket of the 17th Judicial District Court, Number 5888 on the docket of this Court, against Clarissa E. Wisner, et al., said proceedings being styled a jactitation action in which the Broussards asserted possession in themselves of Lot 3, Section 4, T 24 S, R 20 E, the land set forth in appeal Number 5858 described above. The District Court maintained exceptions of want of possession and this is one of the consolidated cases on appeal.
On April 24, 1957, Eugene D. Broussard, et al. filed suit No. 17521 on the docket of the 17th Judicial District Court, Number 5889 on the docket of this Court, against Robert J. Walker, et al., also styled an action of jactitation in which plaintiffs asserted possession of Lots 1 and 2, Section 3, T 24 S, R 20 E. The District Court maintained an exception of want of possession and this is one of the consolidated cases on appeal.
On April 24, 1957, Eugene D. Broussard, et al. filed suit No. 17522 on the docket of the 17th Judicial District Court, against Andrew M. Viguerie, et al. asserting possession of Lots 2 and 8, Section 4, and the NE¼ of Section 10, T 24 S, R 20 E, under a jactitation action. The plaintiffs consented to the dismissal of this suit and in the Trial Judge's reasons for judgment appeared the following:
"By Messrs. Broussard and Cyr:
"Counsel for Plaintiffs consent to the rendition of a judgment against Plaintiffs in Suit No. 17522 on the exception of want of possession to the effect that Plaintiffs have not shown the possession necessary to maintain the action in jactitation as against the Defendants in said Suit No. 17522."
This is of importance because this land lies between the lands involved in appeal No. 5888 and appeal No. 5889 and makes those two tracts non-contiguous.
On April 24, 1957, Eugene D. Broussard et al., filed the instant case, No. 6140 (No. 17520 on the docket of the 17th Judicial District Court) against Louisiana Land & Exploration Co., asserting possession of fractional Section 5, T 24 S, R 20 E. The District Court referred exceptions of want of possession to the merits and after trial on the merits the Court maintained plaintiffs' action of jactitation in this case and the defendants L. L. & E and Texaco have perfected this appeal.
Procedurally the record is somewhat confused in that various aspects of the case were tried as if all of the defendants had filed certain pleadings, while in truth and in fact, only some of the defendants had filed such pleadings while others had not, and yet the three consolidated cases were treated procedurally as one case and as if *88 all parties had filed similar pleadings. Part of this confusion arises out of the fact that plaintiffs attempted to cumulate in one action of jactitation based on claimed possession, an action to establish title as if neither party was in possession, a declaratory judgment proceedings, and a petitory action. The latter three, although pleaded in the alternative, are completely inconsistent with an action of jactitation.
Exceptions of improper cumulation of actions were filed by one of the defendants (the plaintiff in this suit and in suit No. 5888) wherein the exceptor prayed that the plaintiffs be held to have waived all actions by the petitory action, or in the alternative be ordered to elect to proceed under their action of jactitation. No such exception or action was filed in No. 5889 and thus no election to proceed in an action of jactitation is in that record. In his reasons for judgment the Trial Judge stated that the plaintiffs had elected to proceed in this manner in all of the proceedings and the record indicates that No. 5889 was tried in the same manner as the other two cases. Exceptions of want of possession were also filed by some of the defendants on the grounds of plaintiffs' lack of sufficient evidence to prosecute an action of jactitation and yet the case was handled as if all parties had filed exceptions of want of possession and judgments were rendered accordingly.
As a result of the procedural differences a series of conferences and discussions were held before the Trial Court in all the cases before this Court and in case No. 17522 which was subsequently dismissed as stated above. There was a general agreement by all parties that the cases would be consolidated for trial for the sole purpose of taking testimony and trying the issue of possession without prejudice to any party to assert any rights or defenses other than possession in each of the individual proceedings. This was done at a pre-trial conference held February 7, 1958, where it was further reserved to those defendants who filed exceptions of want of possession the full benefit of said exceptions whether or not the same were tried in limine. This matter was again brought up prior to the time of the trial and again the Court made it clear that the sole issue before the Court was possession relative to an action of jactitation and at that time no objection was made to this procedure.
As previously stated, all five cases were consolidated for trial, three of which are on appeal here, and on May 17, 1961, for written reasons assigned, exceptions of want of possession in the case at issue were referred to the merits and exceptions of want of possession in Nos. 5888 and 5889 were maintained.
On August 13, 1963, after taking additional testimony, the Trial Judge rendered judgment maintaining plaintiffs' possession in this case and ordered defendants to disclaim any right, title or interest in and to the property at issue herein, or assert by separate appropriate proceedings within 60 days from date thereof such possession as they had or may have in the said property. It is from that judgment that this appeal is entered.
The appellants in this case allege two specifications of error, one, that the Court below erred in maintaining defendants' exception of want of possession upon plaintiffs' failure to prove possession and in referring said exception to the merits, and two, the Court erred in finding there was sufficient possession on the part of the plaintiffs to maintain a possessory action (possession sufficient to maintain plaintiffs' action of jactitation).
The appellant urges the Trial Court was in error in permitting plaintiffs, over defendants' objection, to introduce at the trial on the merits, evidence which they failed to introduce at the original trial, arguing that the evidence to be introduced on the exception of want of possession was the same as the trial on the merits which was in effect a possessory action and plaintiffs had thus been given two bites of the apple.
*89 This case was tried prior to the adoption of the new Code of Civil Procedure.
An action of jactitation is founded on possession and is in the nature of a possessory action and at the time this suit was filed was governed specifically by Articles 46, 47, and 49 of the Louisiana Code of Practice of 1870. Article 49 reads as follows:
"In order that the possessor of a real estate, or one who claims a right to which such estate may be subjected, may be entitled to bring a possessory action, it is required:
"1. That he should have the real and actual possession of the property at the instant when the disturbance occurred; a mere civil or legal possession is not sufficient;
"2. That he should have had that possession quietly and without interruption, by virtue of one of the titles prescribed in the forty-seventh article, for more than a year previous to his being disturbed; provided the possession of less than one year be sufficient, in case the possessor should have been evicted by force or by fraud;
"3. That he should have suffered a real disturbance either in fact or in law;
"4. That he should have brought his suit, at the latest, within the year in which the disturbance took place.
"When the possession of the plaintiff is accompanied with all those circumstances, it matters not whether he possesses in good or in bad faith, or even as a usurper, he shall nevertheless be entitled to his possessory action."
Therefore, in order for plaintiffs to recover they must meet the tests set forth in that Article.
The Trial Judge points out in his reasons for judgment that plaintiffs' claim of possession has two main sources, "(1) as lessors to persons who carried on cattle grazing operations over a period of years; and (2) as lessors to persons carrying on drilling operations for minerals in more recent times."
The testimony introduced at the trial in regard to cattle grazing was quite general and covered all the property in question. For that reason the testimony in regard to cattle grazing will be treated in detail in this opinion and so will the general geographic description of the area in question.
The Trial Judge gave a brief geographic sketch of Timbalier Island in his written reasons for judgment:
"Timbalier Island measured a length of about 8½ miles at the time it was first surveyed in 1837 when it was subdivided into sections and lots, approximately half of the area lying in T 24, S, R 20 E, and half in T 24 S, R 21 E, its westernmost shore line being the east bank of the stream designated on recent plans of survey as Bayou Ferdinand. Since that time approximately the easternmost 5 miles thereof have eroded, and the island has been built up on its westerly end by accretion until the present time, when the island measures an approximate length of 9 miles, the easternmost 3½ miles of which consist of the original Timbalier Island. Thus, all of that portion of the island which lies west of the east bank of Bayou Ferdinand was once the Gulf of Mexico. The south shore of the Island fronts on the Gulf of Mexico. The Island is generally a large sandy area of slight elevation except along its northernmost shore, which is marshy. It has no trees and sparse vegetation. The lands claimed by the Broussards and their co-claimants in these proceedings are described according to Governmental subdivisions, which were established by the official survey and depicted on the official plat."
*90 The lands claimed by the plaintiffs are described according to governmental subdivisions which were established by official survey and depicted on an official plat. The official township plat was introduced in evidence as Plaintiffs' Exhibit 13.
The record shows that in the early part of the twentieth century there appeared to be a small colony on the island. The last permanent resident was Ferdinand Desiree who claimed to be the owner of Lot 4, Section 4 T 24 S, R 20 E, which adjoins the property in question herein on the east. He lived on the easterly bank of Bayou Ferdinand which at one time was the western end of the island. He apparently hunted and fished and raised a few crops. In 1917 he conveyed the property to Hewitt Angers who was the author in title of the Daspits, the plaintiffs in suit No. 16542 mentioned above.
The main witness for the plaintiffs was Duard Eymard who was approximately 73 years of age. He testified that no other living person knew more about the island and the buildings thereon than he did. He commenced grazing cattle on the island in 1937. He testified he first secured permission from Mr. Angers to run cattle and that such permission covered approximately 150 acres claimed by Mr. Angers. He also said he understood that Mr. Angers had leased him about 500 acres of Broussard land. He further testified that during the course of his cattle operations he took leases from other claimants and made it clear that he had permission from both the Vigueries and the Daspits and would have in fact taken a lease from anyone who claimed land on the island if the rent was not too high. He further testified thus:
"Q: If anyone else had claimed land on the island you would have taken a lease from them too?
"A: Well, I don't know how many. I don't believe I am going to take too many. I would take the cattle away.
"Q. But if was just one or two and it wouldn't have cost too much you would have taken one or two more?
"A: Yes."
Mr. Eymard further testified that no one had pointed out any boundaries to him, that the cattle roamed at will all over the island, that it was open range and he didn't know what land was claimed on the island by any of his lessors. He said neither he nor they located or attempted to locate any boundary and no one ever identified any particular property as belonging to anyone. And in regard to a question as to whether or not he knew what land the Broussards claimed on the island he answered:
"A: I heard it said it was at the end of the Bayou in another place. I don't know."
The first written lease Mr. Eymard took was from the Vigueries in 1949 and on the same date he took a lease from Daspits-Berlanger claimants. Neither of these leases covered the land in question herein, but the lease from the Vigueries covered Lots 2 and 8 of Section 4 which was claimed by the plaintiffs in suit No. 17522 which was dismissed. The same property was covered in the lease from the plaintiffs to Eymard and in the lease to the St. Pierres, Eymard's successors. The lease from the Daspits covered Lot 4, Section 4, which was claimed by plaintiffs but which claim they surrendered by the confession of judgment in suit No. 16542 mentioned above. He took his first lease from the Broussards in 1950, and he testified he did not know where the property covered by any particular lease was located.
The cattle were allowed to forage at will. The only provisions Mr. Eymard made for his cattle was a large water hole dug west of Bayou Ferdinand. He said the only water holes on the east side, other than the artesian well he dug on the accretion, were put there by persons unknown to him and before he started his cattle *91 operations. The cattle were rounded up about once a year for transportation to market. At that time men and horses were taken to the island for the round up and that was the only time Mr. Eymard would stay around the camp. He testified the only place he went ashore when he visited the island was on the accretion to Section 5, which was the only place he was ever visited by the Broussards. His acts of occupancy consisted of a camp he built around 1938 or 1939, a corral he built about a year later, a concrete water trough he constructed around 1935 east of Bayou Ferdinand, and a fence he erected in 1947 extending from the corral across the accretion into Section 5. All of the improvements except a small section of the fence were erected on land which was formerly the bed of the Gulf of Mexico and not within the boundaries of Fractional Section 5. All of these improvements are shown on the stipulation map filed in the record, and all parties stipulated as follows:
"BY MR. HILLYER:
"If Your Honor please, all of the counsel in these cases have agreed that Mr. Fenstermaker will plot on one of his maps of the entire island such physical evidences as he has records of or as he can obtain from the other parties to the cases including the logs of all wells, locations of all wells I should say, drilled on the island, the approximate location of the canals that have been dug upon the island and the remains of former buildings that were situated on the island, together with the fences and corral that are presently on the island and whatever available dates that there may be in connection with such evidence, also water holes and shot points, and that his fees for such work shall be charged as costs. I would like to add that he will also show the original governmental survey on the map just as he has done in the past.
"BY THE COURT:
"This stipulation is intended to cover former buildings and ruins thereof and all present structures of whatever nature and kind there may be."
Mr. Eymard sold the improvements he had placed on the island to Valmont St. Pierre and his son, together with such cattle as he had in 1954. The St. Pierres continued the cattle grazing operations until May of 1957 when the cattle were removed from the island. Mr. St. Pierre's operations were substantially the same as those of Mr. Eymard. Mr. St. Pierre took leases from the Vigueries, Daspits, Berlangers and Broussards. But he testified he did not know where the lot lines on the island were located and that he knew there was land on the island not covered by the leases but he permitted his cattle to roam all over the island. He also testified that if anyone else had offered to lease the land on the island he would have leased from them also. When asked whether or not anyone else had put cattle on the island under leases from other landowners (from whom he had not leased) he answerd "yes". He also testified:
"Q: Are you familiar with the section lines on the island?
"A: No.
"Q: Are you familiar with the various lots on the island?
"A: No. I never was pointed out any by anyone. I was never shown any lines.
"Q: What did the Broussards show you?
"A: He told me he had 500 acres of land there.
"Q: Where did he tell you his 500 acres were?
"A: East of Bayou Ferdinand.
"Q: And what member of the Broussards was that?
"A: Eugene." *92 In subsequent testimony Mr. St. Pierre testified he knew that the Broussards did not claim the entire island.
Apparently the only time the plaintiffs ever attempted to point out the land herein claimed was in 1954 when part of the Broussard family came to the island. They showed Mr. St. Pierre some land on a map but he testified they did not get off the boat. Sometime in February of 1956 some members of the Broussard family pointed out a portion of the fence and two water holes to Mr. St. Pierre's son, Richard. He testified Mr. Broussard did tell him the corral was on land owned by Mr. Broussard.
It should be pointed out with regard to the leases to Mr. Eymard and Mr. St. Pierre that they could neither read nor write English. In fact their testimony at the trial was taken by benefit of an interpreter and thus the descriptions meant nothing to them. This fact gives credence to their testimony that they did not know which property was covered by the various leases.
Regarding cattle grazing, the Trial Court concluded it appeared the only actual physical possession exercised by the plaintiffs related to Section 5 and the accretion thereto, and held that this accretion was the property of the State of Louisiana, as to which there could be no adverse possession. The Trial Court further concluded that all the plaintiffs had established concerning cattle grazing insofar as suit Nos. 17519, 17521 and 17522 was indiscriminate open range grazing and that while indiscriminate grazing of cattle on fenced land may be evidence of possession when accompanied by other indiscriminate acts of possession, it does not alone suffice to show the degree of possession required in a possessory action. Apparently basing his conclusion on the testimony concerning the construction of the corral, water trough and fence, the Trial Judge concluded there was some evidence of possession as to a small portion of Section 5 sufficient to warrant referring the exception of want of possession to the merits in this suit. Thus the effect of the Trial Judge's holding in regard to cattle grazing was to sustain the exception of want of possession in the two cases consolidated herein and to refer the exception to the merits in this case.
The Trial Judge further held (which point will be discussed in greater detail in the opinions in the companion suits) that as Section 5 was now non-contiguous to the other tracts, the rule of possession of part is possession of the whole would not apply to the other tracts and any possession which plaintiffs had of Section 5 would not apply to any other lands concerned in this consolidated action, and similarly no possession asserted as to any other lands would apply to Section 5.
In regard to plaintiffs claim of possession as lessors to persons carrying on drilling operations, the record shows that Tidewater Oil Company had purportedly conducted certain operations previous to a lease granted to it by the Broussards. These operations consisted of the beginning of dredging of a canal on or about June 7, 1956 and the spudding in of a well on July 22, 1956, which well was completed on October 16, 1956 as a shut-in gas well. The record shows the permit for the well was not secured until June 15, 1956. The Court held plaintiffs' mineral operations were not such as to permit them to rely upon the possession necessary for the action of jactitation as they all occurred less than one year prior to the filing of the suit by plaintiffs on April 24, 1957, and thus would not have given them one year possession before filing suit.
The judgment referring the exceptions to the merits was signed on May 17, 1961. On November 14, 1961 additional testimony was taken which indicated that on April 19, 1956, a Mr. O. L. Thomas staked out a location for a well which was spudded in on October 16, and sometime prior to April 23, 1956 Mr. J. D. McQuirt restaked a location for a canal. This testimony, *93 together with the testimony of the Broussards that they had made four trips to the island in 1950, 1951, 1954, and 1956, was the only additional testimony introduced by plaintiffs which would indicate any ground upon which the Trial Judge could have granted the plaintiffs a judgment based on possession. In his reasons for judgment dated August 13, the Trial Judge merely stated that in addition to the evidence of possession referred to in his earlier reasons for judgment, the later testimony of November 14, 1961 presented additional evidence of possession sufficient to maintain plaintiffs' action of jactitation, and on the same day he signed a judgment accordingly.
Under the settled jurisprudence an action of jactitation is a form of the possessory action. In Green v. George, 213 La. 739, 35 So.2d 595, the Supreme Court of Louisiana said:
"The action of jactitation or slander of title is founded exclusively on possession, is a form of the possessory action, and is governed by the rules thereon of the Code of Practice. See Article 46, Code of Practice; Williams' Heirs et al. v. Zengel, 117 La. 599, 42 So. 153; Miller v. Albert Hanson Lumber Co., Ltd., 134 La. 225, 63 So. 883; Brashears et al. v. Chandler, La.App., 183 So. 546."
It is also true that upon a denial of the plaintiffs' possession, the burden of proof to establish possession for the time required by law falls upon the plaintiff. See Hill v. Richey, 221 La. 402, 59 So.2d 434; Buckley v. Dumond, 156 So. 784 (La. App.); Bossier Enterprises, Inc. v. Carbone, 66 So.2d 521 (La.App.)
As held in Case v. Jeanerette Lumber & Shingle Co., La.App., 79 So.2d 650, the type of possession required of a plaintiff in a possessory or jactitation action is identical in nature to the possession required as the foundations of prescriptive title. See also Ellis v. Prevost, 13 La. 230 (1839), revd. 19 La. 251 (1841), and is the same sort of physical and corporeal possession required for the commencement of running of acquisitive prescription.
The Trial Judge was correct in his finding that indiscriminate grazing of cattle on unfenced lands is not sufficient possession required in a jactitation action. See Beugnot v. New Orleans Land Company, 139 La. 687, 71 So. 947; Sessions v. Tensas River Planting Co., 142 La. 399, 76 So. 816; Harang v. Gheens Realty Co., 155 La. 68, 98 So. 760; McCluskey v. Meraux & Nunez, 186 So. 117 (La.App.); and O'Connor Realty Co. v. Green, 13 La.App. 127, 127 So. 406.
The record clearly shows that neither Mr. Eymard nor Mr. St. Pierre ever had intention of possessing any particular land on the island for any particular person or under any particular lease. It is apparent they did not know what land was covered by what lease and that they were willing to take a lease from anyone who claimed land on the island. Their operations were classic open range cattle operations conducted as much under one lease as under another and it is difficult to see how it could be maintained that they were possessing for the benefit of any one of their lessors or that any one of the lessors could use this indiscriminate cattle grazing as the basis for a possessory action.
Apparently the acts of possession which the Trial Judge found would justify his referring the exception of want of possession to the merits was the construction of the camp, corral, fence and water hole by the plaintiffs' lessee, Mr. Eymard. However, a map made by Mr. Fenstermaker of Section 5 and the accretions surrounding it, and upon which all of the alleged improvements have been plotted, clearly shows that the corral, the water trough and all but 20 feet of the fence were constructed on the accretion to Section 5 and not on Section 5 itself. In addition, both Mr. George Broussard and Mr. John D. Broussard admitted it was until 1956 that they *94 were aware of the fact that the improvements they thought were on their property were actually on the accretion or so-called made lands. The Trial Judge recognized this fact but apparently felt that possession by plaintiffs' lessee on made land adjacent to plaintiffs' land was possession on behalf of plaintiffs. Yet the Trial Judge stated in his reasons for judgment that this accretion belongs to the State of Louisiana and cites Bruning v. City of New Orleans, 165 La. 511, 115 So. 733; Cocke v. Spangler, 159 La. 409, 105 So. 413; and Martin v. City of Lafayette, 162 La. 262, 110 So. 415.
It is clear that as the plaintiffs' lessor Mr. Eymard could not possess for himself, he certainly could not be said to be possessing for the plaintiffs on that portion of land formed by accretion. The testimony shows, and the plats bear out the testimony, that the improvements were placed on this particular property for the reason that it was closer to the mainland and the best place to bring in cattle at the time of the round-up. As shown by the stipulated plats, this area could be reached directly from Lot 4 without crossing Lot 5 and plaintiffs, by agreeing to a consent judgment in suit No. 16455, admitted they had no possession of Lot 4.
As for the water holes shown on the east side of the Bayou, one or more of which are in Section 5, plaintiffs' lessee Mr. Eymard testified he did not construct them and did not know who did. Thus, the sole evidence of actual physical possession on the part of plaintiffs is that small section of fence crossing Section 5 from accretion land and ending in accretion land.
The plaintiffs contend that under Article 3438 of the LSA-Civil Code, the mentioned fence inured to their benefit since it was built by one who holds a grazing lease from them. Counsel for defendants pointed out that Article 3436 states that the lessee in question must have had the intention of possessing the land for the Broussards as owners. It must be remembered that Mr. Eymard, who constructed the fence, held leases from three parties and testified he did not know what land covered which lease. The testimony does not show that it was his intention to possess for anyone. He stated that the location of the fence in Section 5 was for the sole purpose of bringing it outside of the concrete water trough. He testified he did not know where Section 5 was located.
It is the opinion of this Court that the construction by plaintiffs' lessee of the various improvements upon the accretion to the island, primarily lying adjacent to Section 5, does not, in view of the evidence and the jurisprudence of this State, indicate it was the intention of plaintiffs' lessee to possess for and on behalf of the plaintiffs, and as these improvements are located on the land which belongs to the State it cannot be said they evidence any corporeal, physical evidence of possession on behalf of the plaintiffs. We do not feel the small section of fence across plaintiffs' property would in any sense evidence a showing of possession on the part of the plaintiffs. Therefore, neither through cattle grazing nor cattle operations has plaintiff shown any possession which would warrant the Trial Judge's finding.
At the trial of the exception on the question of possession the Trial Judge held that the mineral operations conducted on behalf of the plaintiffs by their lessee were not sufficient to permit them to rely upon mineral operations as a basis for this action as the operations had commenced less than one year prior to the filing of this suit. The question then arises as to whether merely the staking of a location and the staking of a canal by a surveyor is sufficient to commence the initial corporeal possession necessary to maintain the exception. There is no question but under the jurisprudence that even a complete survey of property is not sufficient evidence of possession. See Ramos Lumber & Mfg. Co. v. Labarre, 116 La. 559, 582-583, 40 So. 898; Hanson Lumber Co. v. Baldwin Lumber *95 Co., 126 La. 347, 352, 52 So. 537; Klumpp v. Howcott, 139 La. 163, 71 So. 353; Pierson v. Shepherd, 6 La.App. 333.
Plaintiffs' argument is that the staking of the location on April 19, and the staking out of the canal were followed by the commencement of the digging of the canal between June 7 and July 22, and the spudding in of the well on July 22, and that all of this shows a continuous act of possession. This argument is untenable, however, in that the question concerned herewith is whether or not the actual staking of the location of the canal by the surveyor is sufficient to commence the initial real and corporeal possession necessary to maintain a possessory action or a jactitation action, and not whether the act of staking out of a well followed by the actual dredging of the canal and the actual drilling of the well are all one continuous act. Under the plaintiffs' argument the staking could have been done in April of 1956 and the spudding in on March 1957, approximately a year after the staking, and yet the party would have had sufficient possession within a year in which to bring this action. Plaintiffs have not cited one case in support of their position. They have not cited one case which would indicate that the mere staking of a location was such visible, open and public possession as to give notice to the world of their intent to possess, which is the type of possession necessary to maintain a possessory action. See Forrest v. Messenger, La.App., 20 So.2d 766, citing Hanson Lumber Co. v. Baldwin Lumber Co., 126 La. 347, 352, 52 So. 537.
At the trial below and in argument before this Court the plaintiff forcefully argued the question of whether or not the properties involved in the three appeals are, for the question of possession, to be treated as contiguous tracts so that possession of part should be considered as possession of the whole. The Trial Judge rejected this reasoning of the plaintiffs and held that due to the fact that the plaintiffs had abandoned their possession by certain acts in regard to certain tracts which made the remaining tracts at issue herein all non-contiguous, possession of part could not be possession of the whole. However, in view of our holding herein and in the companion cases that the plaintiff has not shown sufficient possession to warrant the maintenance of the actions and that all of the three suits involved should be dismissed for failure of plaintiffs to prove possession, that matter is of no consequence in this appeal.
For the above and foregoing reasons it is ordered that the judgment of the Trial Court be reversed and judgment rendered in favor of the defendants and against the plaintiffs rejecting plaintiffs' demand and dismissing this suit at their cost.
Reversed and rendered.