171 So. 442

BALDWIN et al. v. ARKANSAS–LOUISI-
ANA PIPE LINE CO.

No. 34096.

Nov. 30, 1936.

Rene A. Viosca and Baldwin, Haspel & Molony, all of New Orleans, and Irion & Switzer, of Shreveport, for appellants.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellees.

ODOM, Justice.

Plaintiffs filed their original petition in this suit on July 12, 1933, alleging that they were the owners in fee simple of the S. W. ¼ of the S. E. ¼ of Sec. 27 and the N. W. ¼ of the N. E. ¼ of Sec. 34, Tp. 23 N., R. 16 W., and that the Arkansas-Louisiana Pipe Line Company, a corporation made defendant in the suit, had, on or about September 16, 1932, unlawfully and in bad faith entered upon the land, drilled for oil or gas, and had since that time produced from the land and sold large quantities of natural gas and gasoline. They further alleged that defendant was in possession of the land at the time the suit was filed, unlawfully extracting therefrom natural gas, thereby causing the value of their property to depreciate constantly, and that unless restrained by injunctive process would continue in its unlawful possession and waste of the land.

They alleged that they were entitled to an accounting by the defendant showing the quantity and value of all gas and gasoline extracted from the land. By specific allegations petitioners set out the chain of title under which they claim the land and made certified copies of the deeds and other instruments parts of their petition. They prayed for judgment recognizing them as owners of the land, for an injunction restraining the defendant or its agents from going upon the said property for any purpose whatever and from doing any act which would in any wise "disturb your petitioners in the enjoyment and use of said property as owners thereof," and for an accounting.

Defendant in answer denied that plaintiffs were the owners of the land and specifically pleaded that "the deeds referred to do not nor were they intended to affect the property described in paragraph one of the petition." It admitted that it took possession of the land in September, 1932, and still had possession of it, and then disclosed the nature of its possession, alleging that it took possession "under the provisions of an oil, gas and mineral lease executed by F. E. Gloyd, a resident of the State of California, the owner of the said property, dated August 29, 1932, recorded in Conveyance Book 309, Page 251, of the records of Caddo Parish, and drilled thereon a producing well." It admitted that it was engaged in the business of producing and transporting natural gas and that it had extracted from said land quantities of natural gas and sold the same, but denied that plaintiffs had any interest therein, because they were not the owners of the land.

Defendant then alleged, beginning with paragraph 18 of its answer, that on De-

cember 16, 1901, J. B. Roberts sold by specific description and by deed translative of property the land now claimed by plaintiffs, to the Black Bayou Lumber Company, and that said property passed by mesne conveyances from that company to F. E. Gloyd, its lessor. Defendant further alleged that when the Black Bayou Lumber Company acquired the land from Roberts in 1901 it immediately took possession thereof in good faith and that said company and its successors in title, including Gloyd, plaintiff's lessor, had retained continuous, open, and uninterrupted corporeal possession thereof as owners since 1901, and pleaded the prescription of ten years acquirendi causa.

Defendant prayed that plaintiff's demands be rejected, and, in the alternative, that should their demands be allowed and an accounting ordered, that the right of defendant to demand and receive the cost of drilling and producing the gas be reserved.

On the day the case was set for trial the following agreement or stipulation was entered into by counsel for plaintiffs and defendant:

"It is agreed and stipulated, that both parties, hereto, shall reserve all rights with regard to an accounting for the gas produced from the premises in controversy, which rights shall be reserved subject to the judgment to be rendered upon the question of title. In other words the parties hereto will limit it as to the question of title to the property, and if that is determined in favor of the plaintiff, then the matter of accounting shall be proceeded with thereafter."

After the case was tried on its merits, argued, and submitted, the trial judge, apparently on his own motion, rendered judgment as follows:

"In this cause the Court being of the opinion that the issue presented of title to the lands in controversy cannot be determined as between plaintiffs and the defendant Arkansas-Louisiana Pipe Line Company, a lessee, having by its pleadings disclosed the nature of its possession, it is, therefore, ordered, adjudged and decreed that plaintiffs' demands be and they are hereby dismissed as of non-suit at their costs."

On plaintiffs' application a rehearing was granted, and the case was reopened. That was on November 25, 1935, and on March 14, 1936, plaintiffs filed a supplemental and amended petition in which they made reference to the judgment "ordering and permitting" them to make Gloyd a party defendant and alleged that while they thought Gloyd was not a necessary party defendant, yet in view of the order of the court and with full reservation of their rights, "petitioners now ask that in accordance with said judgment that F. E. Gloyd be made a party defendant."

Gloyd was cited, served, and made answer in which he denied that plaintiff had any title to the land and set up title in himself. He also pleaded the prescription of ten years' acquirendi causa. His answer and pleas are practically the same as those set out in the answer of the Arkansas-Louisiana Pipe Line Company.

The case was then submitted on the record previously made up. Judgment was

rendered maintaining the plea of prescription filed by Gloyd and the Arkansas-Louisiana Pipe Line Company, dismissing plaintiffs' demands, from which judgment they appealed.

This is a petitory action by which plaintiffs are asking that they be decreed the owners of the eighty acres of land above described. In the original petition the Arkansas Louisiana Pipe Line Company only was made a party defendant. In its answer it admitted that when the suit was filed it was, and had been for several years prior thereto, in possession under an oil, gas, and mineral lease from F. E. Gloyd, a resident of the state of California. It set up that Gloyd and not the plaintiffs was the owner of the land and that, therefore, its possession was lawful. It did not then nor did it later, so far as the record discloses, file an exception of nonjoinder on the ground that Gloyd, its lessor, should be made a party defendant, nor did it ask to be dismissed from the suit, having disclosed the name of its lessor and his address. The judge dismissed the proceedings as of nonsuit apparently of his own motion. It was stated by counsel for plaintiffs in oral arguments that counsel for defendant suggested to the court that Gloyd should be made a party and that the judge acted upon that suggestion. However, that is unimportant, the facts being that a judgment of nonsuit was rendered and that plaintiffs subsequently made Gloyd a party defendant.

Counsel for plaintiff still insist that Gloyd, defendant's lessor, was not a necessary party defendant because the Arkansas-Louisiana Pipe Line Company was not a "lessee" of the property in the sense that the term is ordinarily used, but was in possession of the land under a "servitude" granted by Gloyd, and therefore the established rule in this state that in petitory actions the question of title can be determined only between the plaintiff and the landlord, does not apply in this case; and, further, that if the rule does apply, the exception of nonjoinder was filed too late, and they cite numerous cases holding that an exception of nonjoinder is dilatory and must be filed before issue joined.

■■■ As a matter of fact, no exception of nonjoinder was ever filed, and the question whether the judgment of nonsuit was authorized from any standpoint is not before us because plaintiffs did not appeal from it. Their failure to appeal and their subsequent filing of an amended and supplemental petition making Gloyd a party were an acquiescence in the judgment. The language of the judgment informed plaintiffs of the reasons why their suit was nonsuited. They could have appealed. Under article 565 of the Code of Practice an appeal lies from all final judgments, and a judgment of nonsuit dismissing the plaintiffs' demands in toto is a final judgment. State ex rel. Ikerd v. Judge, 35 La.Ann. 212; Davis v. Young, 35 La.Ann. 739; Vicksburg, S. & P. Railroad Company v. Scott, Sheriff et al., 47 La.Ann. 706, 17 So. 249.

In their supplemental petition, by which they made Gloyd a party defendant, plaintiffs "reserved their rights." They had no rights to reserve. They had acquiesced in the judgment of nonsuit by failing to appeal from it.

Gloyd answered, setting up title in himself, and pleaded ten-year prescription.

Counsel for both plaintiffs and defendants having agreed that the issue to be determined is the question of title alone, the Arkansas-Louisiana Pipe Line Company, made defendant in the original petition, has passed out of the case. So that we have before the court only the plaintiffs, who allege that they are the owners of the land and are out of possession, and Gloyd, who admits his possession, denies plaintiffs' ownership, and sets up title in himself.

On the merits the plaintiffs' demands must be rejected for two reasons. The first is that they have failed to discharge the burden of showing that they have title to the land in controversy sufficient to support the action. The second is that Gloyd has established perfect title in himself.

Plaintiffs set up the following chain of title to establish their ownership: United States to Samuel W. Mays; widow and heirs of Samuel W. Mays to Jesse B. Roberts; Jesse B. Roberts to Elias Lake; Elias Lake to Joseph P. Horner; and heirs of Joseph P. Horner to Albert Baldwin, plaintiffs' common ancestor. They refer to various deeds in their chain of title, which are all of record in the parish of Caddo, certified copies of which are found in the record. Defendant in his answer alleged that the deeds referred to did not convey and were not intended to convey the land involved.

The facts as shown by the record are that the land involved was acquired from the United States by Samuel W. Mays, a resident of Arkansas, in 1854. Mays died in Arkansas in 1881, leaving a widow, Mrs. Eliza Mays, two sons, Thomas R. and Samuel C. Mays, and one daughter, Sally, who married Jesse B. Roberts. Three of the deeds relied on by plaintiffs were executed by the widow and heirs of Samuel W. Mays, entryman, all recorded in the year 1888. The conveyances therein were made in favor of Jesse B. Roberts, who married the daughter of Samuel W. Mays. But in these deeds the land here involved was not specifically described by legal subdivisions. They conveyed numerous other lands described by legal subdivision and contained a blanket clause reading as follows:

"Also all their right, title and interest in and to any and all other land in Caddo and Bossier Parishes which belonged to the succession of Samuel W. Mays."

Jesse B. Roberts sold certain lands described by legal subdivisions to Elias Lake on December 15, 1888, and two days later his wife, who was the daughter of Samuel W. Mays, also made a deed to Lake. But in neither of these deeds was the land here involved described by legal subdivisions. Those deeds also contain a blanket clause reading substantially like that above quoted.

On May 30, 1890, Elias Lake deeded certain specifically described property to Joseph P. Horner. But that deed made no mention of this land and contained a clause following the description of other lands, reading thus:

"Also all his right, title and interest in and to any and all other land in Caddo and Bossier Parishes which belonged to the

succession of Samuel W. Mays on December 15, 1888, whether particularly described in this deed or not."

On June 17, 1897, the heirs of Joseph P. Horner executed a deed in favor of Albert Baldwin, the common ancestor of these plaintiffs, in which they conveyed certain lands described by legal subdivisions, but made no mention of the land here involved. That deed, like those above mentioned, contained a blanket clause, following the specific description of other lands:

"Also all their right, title and interest in and to any and all other land in Caddo and Bossier Parishes which belonged to the succession of Samuel W. Mays on December 15, 1888, whether particularly described in this deed or not, being the same property which was acquired by Jesse Potts Horner by purchase from Elias Lake as per act of purchase * * * on the 3rd day of May, 1890."

Plaintiffs therefore rely on numerous deeds forming their chain of title, in not one of which is the land which they now claim described by legal subdivisions. They rely solely upon the blanket clause contained in each of the deeds, their theory being that as Samuel W. Mays had acquired his land from the United States by patent, the parties to the deeds necessarily intended to convey this land along with the tracts specifically described.

The question as to what effect these deeds may have had between the parties to them is not before us. The question is whether the chain of title set up by plaintiffs is sufficient to form the basis of their action against Gloyd, a third party in possession of the lands.

The land involved is in Caddo parish. Samuel W. Mays, the patentee, lived in Arkansas and died there. The land patent which was issued to him by the land office in Washington was never recorded in Caddo parish. Mays died in 1881, and his succession was opened in Caddo parish by a creditor who alleged that the deceased had left debts and valuable real property in said parish and that no administrator had been appointed. He prayed that an inventory be made of all the property left by the deceased. The inventory, if made, seems to have been lost or destroyed. But a certified copy of the appraisement is in the record. It shows that lands totaling 1,200 acres in sections 4, 5, 8, and 9 of Tp. 23, R. 14 W., in the parish of Caddo, were appraised at $6,000. The land involved in this suit was not mentioned. There was a separate appraisement of certain specifically described lands in Bossier parish.

■ Therefore, when Horner's heirs made the deed to Albert Baldwin, plaintiffs' common author, in 1897, when Lake made the deed to Horner, when Roberts made the deed to Lake, and when the widow and heirs of Mays made the deed to Roberts, there was nothing in the conveyance, mortgage, or succession records of Caddo parish to show that Samuel W. Mays had ever owned this property. An experienced land surveyor could not, taking the deed made by the Horner heirs to Baldwin or any of the other deeds set up in plaintiffs' chain of title, have located this property. No map, plat, survey, record, deed, patent,

boundary, or marker was referred to in any of the deeds by which the description of the land could have been made certain. None of the vendees, including Baldwin, could have taken possession of it, for they could not have found it. For the same reasons third parties could not have known that Baldwin or the parties to any of the other deeds claimed it. The description was not sufficient to convey notice.

■ A deed which fails to describe by legal subdivisions the real estate intended to be sold and makes no reference to any deed, map, plat, patent, survey, or boundary by which the description may be ascertained is void as to third parties for want of description of the thing sold. It is not translative of any specific property and could not form the basis of prescription.

■ Plaintiffs do not claim that they ever had actual possession of this land. The only possession they could have had was civil possession resulting from the recordation of the deeds. Our opinion is that the title which plaintiffs present is not sufficient to support their action against Gloyd, a third party in possession of the land through his lessee. Pargoud v. Pace, 10 La.Ann. 613; Green v. Witherspoon, 37 La.Ann. 751; Patin v. Blaize, 19 La. 396; Kernan v. Baham, 45 La.Ann. 799, 13 So. 155.

As was said by the Court of Appeal of the Second Circuit in Hargrove v. Hodge, 9 La.App. 434, 121 So. 224, 225:

"The description in a deed must be such that the property intended to be conveyed can be located and identified, and the general rule is that the description must fully appear within the four corners of the instrument itself, or that the deed should refer to some map, plat, or deed as a part of the description, so that the same may be clear."

■ The trial judge maintained the plea of prescription of ten years acquirendi causa filed by the defendants. That decision is correct. The record shows that on December 16, 1901, Jesse B. Roberts sold by deed translative of property to the Black Bayou Lumber Company the N. W. 1/4 of the N. E. 1/4 of Sec. 34 and the S. W. 1/4 of the S. E. 1/4 of Sec. 27, Tp. 23, R. 16. This is the property involved in this suit. The deed is recorded in Book 28, page 510, of the conveyance records of Caddo parish. It is a private act signed by Roberts, who appeared before a notary and acknowledged that he had executed it.

The record shows—in fact, it is not denied by plaintiffs—that this land passed by mesne conveyances from the Black Bayou Lumber Company to F. E. Gloyd, the defendant. The testimony shows beyond question that the Black Bayou Lumber Company, Roberts' vendee, took immediate corporeal possession of the property. The land was covered by merchantable timber. The Black Bayou Lumber Company was engaged in the manufacture of lumber, and in the year 1902 cut and removed all the merchantable timber from every portion of the 80 acres of land. It also built across the land a tram or logging railroad for the purpose of transporting logs cut from this and other lands. It is shown that the tram road was used by the lumber company for

seven or eight years, and that evidence of it is still in existence. The testimony shows further that after the timber was removed from the land, agents of the lumber company. patrolled the land, walked around its edges and through it to guard against fires and trespassers.

The timber on the land was not cut and removed at intervals, nor was it cut and removed from a portion only of the 80 acres. The testimony shows that timber was removed from every portion of the land during the year 1902. These operations by the Black Bayou Lumber Company, the owner of the land under a deed translative of property, were a sufficient taking of possession to support the prescription of ten years. Kees v. Louisiana Central Lumber Co., 183 La. 111, 162 So. 817.

The Black Bayou Lumber Company took possession of the land as owner and in good faith, and its possession, coupled with that of its vendees, continued to be open and uninterrupted for more than ten years after 1902.

In oral argument before the court and in brief counsel for plaintiffs contended that in the case of United Gas . Public Service Company v. Arkansas-Louisiana Pipe Line Company, 176 La. 1024, 147 So. 66, this court held that the title to this land was in the Baldwin heirs. They are mistaken. In our original opinion in that case we said:

"We are not now concerned with this title. It may, or may not, have been lost by prescription; but we will meet that issue only when (if ever) Albert Baldwin, or his heirs, are before us."

In the opinion on rehearing we said:

"The respective chains of title of the plaintiff and the defendant are set forth in our original opinion. So far as the record title to the property is concerned, it appears to be in Albert Baldwin or his heirs. Whether or not that title has been lost by prescription we are not presently concerned."

The Arkansas-Louisiana Pipe Line Company, which was made defendant in plaintiff's original petition in this case, was defendant in that case, and with reference to possession and prescription we said in our opinion on rehearing:

"The defendant's lessor and immediate authors in title alone have, for more than twenty years, manifested acts of ownership or possession, having paid the taxes for more than twenty years and executed and recorded a mineral lease and kept a man employed to go over the land three or four times a year to prevent destruction of the little second growth timber left on it."

It is therefore perfectly clear that in that suit we were not called upon to decide and did not decide who was the owner of this land.

▪In the present suit plaintiffs pleaded estoppel against ·the Arkansas-Louisiana Pipe Line Company, the basis of the plea being that it had alleged and contended in the suit above referred to that title was in the Baldwin heirs. Even if there be merit in the plea· (as to which we express no opinion), the act of the pipe line company could have no effect as to the claim of Gloyd, who was not a party to that suit.

The pipe line company has never claimed to be the owner of the land. Gloyd, the pipe line company's lessor, is the party who is claiming to own the land, and the issue as to title is between him and the plaintiffs, and not between the pipe line company and the plaintiffs.

For the reasons assigned, the judgment appealed from is affirmed with all costs.