335 So.2d 64 (1976)
VALVOLINE OIL COMPANY, Plaintiff-Appellee,
v.
Edward E. KRAUSS, Jr., et al., Defendant-AppelleesDefendant-Appellant.
No. 5517.
Court of Appeal of Louisiana, Third Circuit.
July 1, 1976.
*65 Patrick H. Wright, Jr., Monroe, and William G. Avery, Jonesville, for defendant-appellant.
Smith, Taliaferro, Seibert & Boothe, by J. W. Seibert, III, Jonesville, for defendant-appellee.
Armand F. Rabun, Farmerville, for plaintiff-appellee.
Before CULPEPPER, GUIDRY and BERTRAND, JJ.
GUIDRY, Judge.
This is a concursus proceeding filed by Valvoline Oil Company the purchaser of oil from a well drilled by Munoco Company in SW/4 of NW/4 Section 24, T.10 N., R.6 E., Catahoula Parish, Louisiana, to have determined the ownership of royalties allocable to a ½ interest (hereafter referred to as the Krauss interest) and a 1/40th interest (hereafter referred to as the Tigner interest) in such property. The title dispute surrounding the Krauss interest *66 is unconnected with and bears no relation whatever to the title dispute surrounding the Tigner interest except that such interests stem from a common author in title. This matter was tried in the lower court only insofar as the Krauss interest is concerned, the matter insofar as the Tigner interest is concerned being still pending. On December 19, 1974 the trial court rendered judgment adjudicating the controversy as to the Krauss interest and ordered that the monies in the registry of the court allocable to the Tigner interest remain so deposited pending further judgment of the court. Although this matter has only been partially tried in the lower court the judgment of December 19, 1974, is a final appealable judgment insofar as it constitutes a complete adjudication as to the Krauss interest, the trial court retaining jurisdiction in the instant matter for the purpose of adjudicating the controversy surrounding the Tigner interest. See Devillier v. City of Opelousas, 243 So.2d 118 (La. App. 3rd Cir. 1971).
The dispute as to the ownership of a ½ interest in the described acreage and which prompted the filing of this concursus proceeding arises as a result of the following, R. A. Stothart, husband of Josephine Stothart acquired a full interest in the property from Stewart Realty Company Inc. by deed dated January 9, 1942, recorded in Book 48, folio 452 entry number 30671 records of Catahoula Parish, Louisiana. Presumably, following his acquisition of the property R. A. Stothart encountered some financial difficulty as a result of which he entered into an agreement with Edward E. Krauss Sr. and H. G. Tigner which provided for a rather complex series of transactions designed to culminate in Krauss Sr.'s acquisition of the property at foreclosure sale following which Krauss Sr. was to deed a one-half interest in the property to H. G. Tigner, as trustee. One-half of the interest deeded to Tigner, as trustee, was to be retained by him for himself and his unnamed associates and the other one-half or a one-quarter interest in the property was to be held in an undisclosed trust for the benefit of R. A. Stothart. This agreement is dated January 8, 1947 and has never been recorded. A copy of this agreement was introduced in evidence as exhibit K1 without objection there being no explanation given as to the whereabouts of the original.
On September 10, 1947 R. A. Stothart instituted suit in the District Court of Tulsa County, Oklahoma, seeking a divorce from his wife, Josephine Stothart. The suit referred to bears number D42175 of the docket of that court. On the same day, i.e., September 10, 1947, R. A. Stothart and his wife entered into a separation agreement and property settlement. This agreement reads in pertinent part as follows:
". . . As to all other property of every kind and character, real, personal or mixed, now owned by the parties jointly or separately, or hereafter acquired by either party, and wheresoever located, shall become and be the separate property of the party in whose name the title now stands, or is taken of record, or has the possession thereof; and the respective owner of such separately owned property as herein defined shall have full and complete authority and right to manage and control same without interference by the other party, and shall also have the right to sell, mortgage, or lease for agricultural, grazing or oil and gas purposes, or otherwise to dispose of the same, or any part thereof, without the joinder of the other party in any instrument of conveyance, mortgage or lease thereof."
On the 4th day of June, 1948, Mrs. Josephine Stothart, appeared in the aforesaid suit, and through counsel, filed answer alleging execution of the separation and property agreement of September 10, 1947 and specifically requested that portions of such agreement (those making reference to custody and support) be made a part of the final decree to be entered by the Oklahoma Court. Mrs. Stothart verified the answer *67 by her sworn acknowledgment and annexed a certified copy of the separation and property agreement thereto. The certified copy of the agreement annexed to Mrs. Stothart's answer does not bear her signature but only that of Mr. Stothart. On July 14, 1948 judgment was rendered in the referenced matter dissolving the marriage between R. A. and Josephine Stothart. This judgment states as follows in regard to the property settlement agreement:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the separation agreement and property settlement made and entered into on the 10th day of September 1947 between plaintiff and defendant, and made a part hereof by reference, be and the same is hereby ratified, approved and confirmed and made the judgment of this court,. . ."
A complete certified copy of the entire divorce proceeding was introduced in evidence at the trial of the instant matter as exhibit K2.
On September 19, 1951 R. A. Stothart conveyed the subject forty acre tract to Edward E. Krauss Jr., such deed being recorded in the records of Catahoula Parish in Book 61 at folio 276. (See exhibit K4). Following his acquisition as aforesaid and on March 14, 1958 Edward E. Krauss Jr. conveyed a ¼th interest in said land to H. G. Tigner and others.
In July of 1969 William C. Nolan acquired oil, gas and mineral leases covering the disputed tract from Edward E. Krauss Jr. and from Josephine Stothart McDaniel, and her two children, Robert Austin Stothart and June Elizabeth Stothart Hodge, which leases were assigned by Nolan to Munoco Company. The lease granted by Krauss provides for the retention by lessor of a 1/6th royalty and that executed by the Stotharts provides for the retention by lessors of a 1/8th royalty. Munoco Company drilled a well on the subject tract which was completed as a commercially producing oil well on the 11th of June, 1971. Plaintiff, Valvoline Oil Company, began the purchase of production from the aforesaid well after its completion and because of the title dispute between Edward E. Krauss Jr. and the Stotharts instituted this concursus proceeding. Plaintiff has paid to E. E. Krauss Jr. the royalties attributable to a ¼th interest (¼ × 1/6 or a.041667) but deposited the royalties attributable to a ½ interest (½ × 1/6 or .083333) in the registry of court pending a determination of the conflict as between Krauss and the Stotharts.
In his answer to the petition of plaintiff Krauss alleged that his vendor R. A. Stothart acquired the subject tract from Stewart Realty Company Incorporated; although this land formed part of the community of acquets and gains which existed between R. A. Stothart and Josephine Stothart McDaniel, the former acquired the one-half interest of the latter in the property settlement agreement dated September 10, 1947, which was later confirmed by judgment of court dated July 14, 1948; and, by virtue of the deed to him from R. A. Stothart dated September 19, 1951 he acquired a full interest in the subject property. Krauss further alleged in answer that R. A. Stothart died on September 15, 1955 and that regardless of the fact a full interest in the subject tract was placed in his name, one-fourth of said property was in truth and fact owned by Robert A. Stothart and now belongs to his two children, Robert Austin Stothart and June Elizabeth Stothart Hodge. In this latter connection we digress at this point to note that by judgment of possession rendered in the matter of the Estate of Robert A. Stothart, No. 466 of the docket of the Seventh Judicial District Court for the Parish of Catahoula, the two children above named were recognized as the sole and only heirs of the decedent.
The Stotharts filed answer and allege that the subject property formed part of the community of acquets and gains which *68 existed between R. A. and Josephine Stothart; that there never was a partition of the community the settlement agreement confirmed by the Oklahoma court never having been signed by Mrs. Josephine Stothart and being only a proposed settlement; that such agreement is otherwise invalid by reason of fraud; and, defendants, Robert Austin Stothart and June Elizabeth Stothart Hodge are owners of a one-fourth interest by virtue of the judicial admission contained in the answer of Edward E. Krauss Jr. Accordingly, these defendants contend that they collectively own an undivided ¾th interest in the subject land, Mrs. Josephine Stothart owning a ½ interest and the Stothart children a ¼th interest.
Without assigning reasons the district court decreed the disputed interest in the subject tract to be owned ½ by E. E. Krauss Jr. and ½ by the Stothart children and accordingly ordered the lessors' royalty under the Munoco leases allocable to this interest to be distributed as follows:

"Edward E. Krauss, Jr., husband of Beverly Nussbaum Krauss .....041667
June Elizabeth Stothart Hodge ................................. 015625
Robert Austin Stothart .........................................015625
Munoco Company .................................................010416[1]
The court further recognized the above named parties as owners of that part of the fund on deposit attributable to their interest.
Mrs. Josephine Stothart McDaniel has appealed devolutively from the trial court judgment. The other parties, E. E. Krauss Jr., June Elizabeth Stothart Hodge, Robert Austin Stothart, Munoco Company, and Valvoline Oil Company have neither appealed nor answered the appeal of Mrs. Stothart.
Appellant urges that the trial court erred in finding that appellant was divested of her community one-half interest on the subject land either by the unrecorded agreement of January 9, 1947 or by the property settlement agreement of September 10, 1947. Appellant suggests the invalidity of both documents on several grounds. We first address ourselves to the settlement agreement of September 10, 1947 for if this agreement sufficed to divest appellant of her interest in the subject land any issue as to the validity or invalidity of the unrecorded agreement of January 9, 1947 is moot.
At the outset we observe that this matter is to be determined in accordance with the procedural rule contained in LSA-C.C.P. Article 3654 which provides as follows:
"When the issue of ownership of immovable property or of a real right is presented in an action for a declaratory judgment, or in a concursus, expropriation, or similar proceeding, or the issue of the ownership of funds deposited in the registry of the court and which belong to the owner of the immovable property or of the real right is so presented, the court shall render judgment in favor of the party:
(1) Who would be entitled to the possession of the immovable property or real right in a possessory action, unless *69 the adverse party makes out his title thereto; or
(2) Who proves better title to the immovable property or real right, when neither party would be entitled to the possession of the immovable property or real right in a possessory action.
In the instant case since neither party relies on possession to support their respective claim judgment must be rendered in favor of the party who proves a better title to the real interest in dispute. In the instant case the adverse claimants deraign their respective title claims to a common author and therefore it was unnecessary for either to present a showing of title beyond that common author. Moore v. Blount, 160 So. 319, (La.App. 2nd Cir. 1935); Gaylord Container Corp. v. Stilley, 79 So.2d 109, (La.App. 1st Cir. 1955); Magee v. Booty, 47 So.2d 828, (La.App. 1st Cir. 1950); Brown v. Mayfield, 45 So.2d 912, (La.App. 2nd Cir. 1950). Considering the documentary and other evidence presented judgment must be rendered in favor of Krauss if we find that the settlement agreement or unrecorded agreement of January 9, 1947 was sufficient to divest Mrs. McDaniel of her community interest in the subject land or vice versa if we find that these agreements were insufficient or otherwise invalid.

THE PROPERTY SETTLEMENT AGREEMENT OF SEPTEMBER 10, 1947
Presumably the trial court determined that the property settlement agreement of September 10, 1947 was valid and sufficed to divest Mrs. McDaniel of her community one-half interest in the subject property. Appellant takes issue with this determination and urges that the trial court erred because:
(a) It was not shown that Mrs. Stothart executed the settlement agreement, the certified copy thereof bearing only the signature of R. A. Stothart;
(b) The settlement agreement and Oklahoma judgment do not contain a description sufficient to transfer real estate; and,
(c) The settlement agreement is otherwise invalid by reason of fraud.
Mrs. Stothart's contention that she is not bound by the settlement agreement because the evidence fails to show that she executed same must fall because she has judicially confessed to the contrary. As aforestated, Mrs. Josephine Stothart McDaniel appeared in the Oklahoma divorce suit instituted by her husband and by verified answer admitted execution of this agreement. In article 3 of her aforesaid answer (K2) she stated as follows:
"That on the 10th day of September, 1947, the parties plaintiff and defendant entered into a separation and property agreement . . .
That a copy of such "separation and property agreement", duly verified, is also shown on Exhibit A, which is hereto attached and made a part hereof."
Pursuant to the last quoted allegation Mrs. McDaniel annexed as Exhibit "A" to her answer a certified copy of such agreement.
LSA-R.C.C. Article 2291 provided follows:
"The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
It amounts to full proof against him who has made it.
It can not be divided against him.
It can not be revoked, unless it be proved to have been made through an error in fact.
It can not be revoked on a pretense of an error in law." *70 In discussing the concept of estoppel by judicial admission our Supreme Court stated in J.H. Jenkins Contractors, Inc. v. Farriel 261 La. 374, 259 So.2d 882, pg. 890 (1972):
"As a legal concept, the judicial confession is designed to dispense with evidence. It has the effect of withdrawing the subject matter of the confession from issue. * * * In the landmark case of [Farley v.] Frost-Johnson Lumber Co., supra, [133 La. 497, 63 So. 122], this Court pointed out that Article 2291 refers only to the confession made in the suit, that is, in the pleadings, or note of evidence, `for the purpose of dispensing from taking evidence * * *.'" Jackson v. Gulf Insurance Company, 250 La. 819, 199 So.2d 886 (1967).
A litigant is estopped or bound by allegations of fact in his pleadings, but not by allegations which are only pronouncements or conclusions of law. Scurria v. Russo, La.App., 134 So.2d 679; Lawrence v. Recoulley, La.App., 235 So.2d 437. However, "While a judicial confession under LSA-C.C. art. 2291 is defined as a declaration which a party makes in a judicial proceeding and is full proof against him, he is not estopped from contradicting his sworn allegations in the absence of a showing that his adversary was misled or deceived by reason of the averment. * * *" Mouledous v. Poirier, La.App., 221 So.2d 291 (1969). Also, a judicial admission in a pleading is not binding when made through an error in fact, such as through ignorance of or a misapprehension of the true facts. Modicut v. Rist, La.App., 98 So.2d 268; Gros v. United States Fidelity & Guaranty Company, La.App., 183 So.2d 670."
In the instant case Mrs. McDaniel clearly confessed to having executed the agreement of September 10, 1947 in her answer in the Oklahoma divorce suit. The plaintiff in that matter clearly relied on this admission for he later sold the subject land as sole owner thereof to Edward E. Krauss Jr. Mrs. McDaniel has not presented any evidence in the instant matter to show that such judicial admission or confession was made as a result of ignorance of or a misapprehension of the true facts. Accordingly, we must hold that Mrs. McDaniel is now estopped to deny that she executed the agreement of September 10, 1947.
Although the settlement agreement was entered into by the parties prior to dissolution of the community and in contravention of LSA-R.C.C. Articles 1790 and 2446 our courts have recognized the validity of such agreements if same are incorporated in the judgment of divorce. The divorce decree rendered by the Oklahoma court as aforesaid contained language approving, confirming and making the provisions of such agreement a part of the decree. In Sheard v. Green, 219 La. 199, 52 So.2d 714, pg. 716, (La.1951) the Supreme Court in referring to the effect of an agreement such as that involved in the instant matter stated:
"Under our law, such a contract as the one involved in this suit would be absolutely null and void if entered into prior to judicial separation or divorce. Civil Code Articles 1790, 2446; Guillot v. Guillot, 141 La. 86, 74 So. 704; Marks v. Loewenberg, 143 La. 196, 78 So. 444; Russo v. Russo, 205 La. 852, 18 So.2d 318. The only way such an agreement under our law is binding is to have it incorporated in the judgment of divorce or have it entered into subsequent to the dissolution of the marriage community. The attack on the contract in this case under Louisiana law is an attack on the judgment of divorce and the only question that this court can consider with respect to a divorce decree of a sister state is the jurisdictional requirement of domicile. Navarrette v. Laughlin, 209 La. 417, 423, 24 So.2d 672 and cases cited therein."
In Pilcher v. Paulk, 228 So.2d 663 (La. App. 3rd Cir. 1969) this court recognized that the courts of this state will sustain *71 the validity of such a property settlement if it is incorporated in the judgment of the court.
Appellant next suggests that the property settlement agreement is invalid and ineffective because it fails to specifically describe the subject land. Appellant cites the case of Beatty v. Vining, 147 So.2d 37 (La.App. 2nd Cir. 1962) in support of this contention.
The property settlement argeement does not specifically describe the subject tract however, by general description it purports to convey to each party such real property wheresoever situated in whose name the title then stood. Title to the subject tract as of September 10, 1947 stood in the name of R. A. Stothart.
In Beatty, supra, the court was concerned with the effect of a general conveyance in a partition instrument between a former husband and wife which, after a specific conveyance of described properties to the parties, purported to convey to the husband all "other real properties in East Carroll and Morehouse Parishes . . ." The general conveyance became important when it was discovered that a 100 acre tract in one of the aforesaid parishes had been omitted from the partition deed. In Beatty, supra, our brethren of the second circuit did determine that this general conveyance was without effect, insofar as it purported to convey the wife's community one-half in the 100 acre tract to the husband and in so concluding stated:
"In order for a deed to be translative of title, there must be some sort of a description of the land so that it may be identified. Richardson & Bass v. Board of Levee Commissioners, 226 La. 761, 77 So.2d 32; Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225."
We believe that our esteemed brethren fell into error in Beatty, supra. The cases cited in Beatty, i.e., Richardson & Bass v. Board of Levee Commissioners, supra, and Waterman v. Tidewater Associated Oil Company, supra, support the proposition that a deed which is not translative of title by reason of inadequate description will not support a plea of ten year acquisitive prescription. In the instant case we are not concerned with prescription nor with the rights of third persons, rather we are solely concerned with the effectiveness of this general conveyance as between the parties to the agreement. The decision of our Supreme Court in the case of Williams v. Bowie Lumber Company Ltd., 214 La. 750, 38 So.2d 729 (La. 1949) is dispositive of the issue presented. In Williams, supra, speaking to this specific issue the court stated:
"The main contention of the defendant is that the deed from Martin to Downman transferred the land in controversy, even though it was not particularly described therein, in view of Martin's expressed intention to convey `all of the property owned by him in the Parish of Lafourche' except certain described land in Section 15 and all land in Section 8.
We think that the point is well taken for the reason that, as between the parties to the contract and their privies, a sale of real property by an omnibus designation is just as effective and binding as though the lands were specifically described.
Under our law, the only prerequisite of form relative to the sale of an immovable is that it must be made by authentic act or under private signature. Article 2440 of the Civil Code. As between the parties, the contract of sale is perfected when three circumstances, the thing, the price and the consent, concur. Article 2439. In the case at bar, all of the essentials appear, i.e., conveyance by Martin of all of the property owned by him in Lafourche Parish (with certain specified exceptions), the price and the consent of the vendor and vendee. And, since Martin's intent to convey everything he owned is clearly expressed in the *72 deed, there is no reason to look beyond the four corners of the contract for interpretation. Article 1945 of the Civil Code provides that `Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them' and that the intent `is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences.'
Counsel for plaintiffs nevertheless maintain that the clause relied upon by defendant is meaningless and invalid because of the lack of a detailed description of the lands and that, therefore, it conveys absolutely nothing. In support of this proposition, reliance is placed in Baldwin v. Arkansas-Louisiana Pipeline Co., 185 La. 1051, 171 So. 442; McCluskey v. Meraux & Nunez, La.App., 188 So. 669; Cupples v. Harris, 202 La. 336, 11 So.2d 609; Snelling v. Adair, 196 La. 624, 199 So. 782; Reynaud v. Bullock, 195 La. 86, 196 So. 29; United Gas Public Service Co. v. Mitchell, 188 La. 651, 177 So. 697 and Daigle v. Calcasieu Nat. Bank, 200 La. 1006, 9 So.2d 394, 395.
The adjudications depended on do not support the contention of counsel and are not applicable to the situation presented here. All of those cases involved the rights of third persons and they are authority only for the proposition that a sale with an omnibus description does not supply notice to third persons who acquire an adverse interest in the lands. This was clearly pointed out in Daigle v. Calcasieu Nat. Bank, supra, where we remarked that, whereas Articles 3306 and 3307 of the Civil Code require precise description as one of the essentials for the validity of a conventional mortgage, there is no specific article of the Code with such a prerequisite as to sales. But, after referring to Articles 2251 and 2259, dealing with the registry of authentic acts by notaries in the Parish of Orleans and those in other parishes, and many authorities, the Court resolved that, to bind third persons, the act must contain a description of the immovables and concluded thus:
`It seems to be settled now by the jurisprudence in Louisiana that such a vague and indefinite description, in an instrument purporting to convey title to real estate, as all of the land owned by the seller in a named parish, is not sufficiently specific to give notice to third parties thereafter dealing with the seller.'
We did not say that such a description rendered the sale invalid as between the immediate parties thereto. On the contrary, we merely held that an omnibus description does not provide adequate notice to third parties."
The legal proposition that as between the parties an omnibus designation in a deed is just as effective and binding as though the lands were specifically described appears to be now well settled. See Tucker v. New Orleans Laundries Inc., 145 So.2d 365 (La.App.4th Cir. 1962, writ refused December 10, 1962); O'Meara v. Broussard, 162 So.2d 777 (La.App. 1st Cir. 1964, writ refused June 8, 1964); Cattle Farms Inc. v. Abercrombie, 211 So.2d 354 (La.App. 4th Cir. 1968). For the above reasons we conclude that the settlement agreement is not invalid for want of a specific property description.
Appellant finally contends that the settlement agreement is invalid by reason of fraud. There is no evidence whatever that appellant's former husband perpetrated a fraud upon her. Suffice it to say in this regard that fraud is never presumed and must be proven by strong, convincing proof, not simply by a preponderance of the evidence. St. Mary v. St. Mary, 175 So.2d 893 (La.App. 3rd Cir. 1965); Teche Concrete Inc. v. Moity, 168 So.2d 347 (La.App. 3rd Cir. 1964); Vestal v. Vestal, 227 So.2d 634 (La.App. 3rd Cir. 1969).
We observe that the appellee Edward E. Krauss Jr. acquired the real interest here in controversy some twenty-five years ago. During all this time appellant made no claim of ownership thereto. Pertinent to this observation is the following *73 well recognized principle that belated claims are not favored:
"The genius of our law does not favor the claims of those who have long slept on their rights and who, after years of inertia, conveying an assurance of acquiescence in a given state of things, suddenly wake up at the welcome vision of an unexpected advantage and invoke the aid of the courts for relief, under the effect of a newly discovered technical error in some ancient transaction or settlement." Lafitte, Dufilho & Co. v. Godchaux, 35 La.Ann. 1161, 1163 (1883); Sun Oil Co. v. Roger, 239 La. 379, 118 So.2d 446 (1960); Succession of Seals, 243 La. 1056, 150 So.2d 13 (1963).
We conclude that appellant has no interest in the property in controversy such interest as was owned by her having been effectively conveyed to R. A. Stothart in the property settlement agreement of September 10, 1947.
For the above and foregoing reasons the judgment of the trial court is affirmed, all costs of this appeal to be borne by appellant, Josephine Stothart McDaniel.
AFFIRMED.
NOTES
[1] In this proceeding plaintiff deposited in the court registry royalties allocable to the largest of the lessor's royalty retained under the conflicting leases, i.e., 1/6th. The interest recognized as belonging to Munoco Company is the difference between the royalty deposited, allocable to a ¼th interest, and the royalty due under the Stothart leases, i.e., 1/8th.