MARVIN, Judge,
dissenting.
I must respectfully dissent from the result.
As Judge Hightower so ably points out and supports, there are many cases where “an omnibus provision has been deemed to effectuate a transfer” even of an un- or ill-described immovable property.
Mr. Fish, the attorney who once represented both parties and who drafted for Mrs. Williams, the community settlement contract in question in this appeal, explained that he knew Mr. and Mrs. Williams had loosely operated their businesses and had acquired both business and non-business immovable and movable properties in Louisiana and in Arkansas in names that were legal non-entities. Explaining the two provisions in the settlement contract, he said:
I did understand that there might be business properties that were not titled in the business ... and it didn’t make any difference whether it was in a family owned corporation or partnership or whatever and that was the purpose of the language, one of the purposes of the language, that without regard to the technical niceties of recorded ownership that they were — that Ann (Mrs. Williams) was going to get half the minerals and it — and if the corporation owned the minerals and Dewey (Williams) was the stockholder of the corporation and the owner, he was obligated to see that she did. * * *
I would think [that would also apply in a similar manner to the situation involving Dewey Williams getting the businesses in this case] ... I understood that there were some titles that were taken in— informally and so forth, thinking particularly about the D & A partnership or the D & A trade name and the Oil Well *573 Service name and how much of that had to do with land and how much of it had to do with business, generally, I was not aware * * *
Mr. Fish explained that he did not put a general omnibus provision in the contract because he did not want Mrs. Williams to convey her interest in any overlooked property, “like, if my client ... can find a bank account ten years later, I want her to get half of it, or if I find out for the first time that he squirreled away anything anywhere, I want to preserve her rights to getting it but that has to do with really property that she didn’t even know existed.”
Do you recall any property that the parties knew existed that was intended to be not divided by the community property settlement?
[Mr. Fish] No Sir.
* * * Did you put some language in the community property settlement to the effect that whatever property was involved in the business would be covered?
[Mr. Fish] That’s correct_ that was my thought ... I thought there might be problems generally just because of the way they had done business, I mean having non-legal entities involved in business ... that’s the purpose of the language [about the technical niceties of recorded ownership] — and the whole idea was that if anybody needs a subsequent deed it would be made ... — in accordance with the intention [of the] parties at — the time the act was subscribed.
And there’s ... the agreement to that effect?
[Mr. Fish] Well certainly and that’s the purpose of it.
Based on this record, the writings exchanged between the parties, the business records, the settlement contract itself, and the testimony of Mr. Fish, I have no difficulty concluding that Mrs. Williams was well aware that the corporation and other family businesses had occupied and improved the two immovable tracts in question for a number of years and that these tracts were “business” properties “without regard to the technical niceties of recorded ownership,” which were to be conveyed to Mr. Williams. In the settlement, Mrs. Williams was to receive certain properties, movable and immovable, that were not “business” properties, and she was to give up or to convey to Mr. Williams all of her interests in all properties of the “businesses,” including, as the contract says, her corporate stock or proprietary interest, corporate, partnership or sole proprietorship [interest], without regard to the technical niceties of recorded ownership
I would agree, in accordance with the explanation of Mr. Fish, that he wrote the contract so that it would not convey to Mr. Williams any property that he had “squirreled away” or any property that either had overlooked.
I conclude, however, that the contract, as Mr. Fish explained, was intended to convey to Mr. Williams everything connected with the businesses, including the two immovable properties those businesses had long occupied and improved, without regard to the technical niceties of recorded ownership. To this extent the contract contains an omnibus provision, limited, however, to the extent that Mrs. Williams could enforce her right to receive mineral rights under undescribed immovable properties and that Mr. Williams could enforce his right to receive undescribed immovable properties [the two tracts in question] long occupied and improved by the businesses. In this critical area, I must disagree with my brethren.
The cases which recognize the effect of an omnibus provision in a contract that affects un- or ill-described immovable property seem to be consistent in two or more respects. The parties are or were, in some way, co-owners of the immovable and, more often than not, one co-owner, after the writing containing the un- or ill-described immovable, goes into possession of the immovable. Thereafter one of the parties seeks to perfect, or to attack, the record title to the un- or ill-described immovable. See Valvoline Oil Company v. Krauss, 335 So.2d 64 (La.App. 3d Cir.1976), and cases cited and discussed therein.
*574 Unlike my other brothers, who with me are concerned with this appeal and with the City Bank & Trust Co. appeal, cited by J. Norris in his concurrence, I have less difficulty in this appeal with the parol evidence rule we applied in City Bank. In cases of the City Bank type, the circumstances usually present no co-owners, but one party who dealt at arms-length to acquire immovable property, in effect an alleged “vendee” who is then seeking to establish title against his legal adversary. In some instances, the legal adversary is not that vendee’s vendor, but another who has record title. See Jackson v. Harris, cited in City Bank. There the alleged vendee loses because of the parol evidence rule. In other instances, the legal adversary is that vendee’s vendor. See Young v. Guess & Swanson, 115 La. 230, 38 So. 975 (1905), cited in City Bank. There the alleged vendee prevails, especially when he shows additionally that the adversary vendor pointed out the un- or ill-described immovable and allowed the vendee to go into possession. See also Mitchell v. Clark, 448 So.2d 681 (La.1984).
I must respectfully dissent in this appeal. I would reverse the trial court, uphold the limited or business omnibus provision, and render judgment declaring that the parties effectively intended that Mrs. Williams would convey title to the two business tracts of immovable property to Mr. Williams. The trial court’s implicit conclusion that Mr. and Mrs. Williams intended to remain as co-owners, and did not intend to deal with those tracts in the contract, is not supported by the record and is clearly wrong in my humble opinion.
I attach the community property settlement as an appendix to this dissent.
*575 APPENDIX
[[Image here]]
STATE OF LOUISIANA
PARISH OF WEBSTER
PARTITION OF COMMUNITY PROPERTY AND SETTLEMENT OF CLAIMS
BEFORE ME, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, personally came and appeared DEWEY E. WILLIAMS, whose mailing address is P.0. Box 471, Springhill, Louisiana 71075, hereinafter referred to as "Mr. Williams," and ANN OLIVE WILLIAMS, whose mailing address is P.O. Box 516, Springhill, Louisiana 71075, hereinafter referred to as "Mrs. Williams," both domiciled in Webster Parish, Louisiana, who declared that they were separated by judgment of the Twenty-Sixth Judicial District Court in and for Webster Parish, Louisiana, in proceedings entitled "Ann Olive Williams vs. Dewey E. Williams," Suit No. 37,532, the judgment decreeing a separation "a mensa et thoro" between them having been dated October 18, 1978.
Appearers, Mr. and Mrs. Williams, do by these presents make and enter into this agreement in full and final partition and
division of all of the property of their marital community of acquets and gains and in full and final settlement of their claims, each against the other.
FOR AND IN CONSIDERATION of the properties received by him herein, and of the premises herein contained in their entirety,- ■ Mr. Williams does by these presents exchange, transfer, set-over, convey and deliver unto Mrs. Williams, here present and accepting the same for herself, her heirs, successors and assigns, all of his right, title and interest in and to the following described property, to-wit:
1. Certificates of Deposit in Springhill Bank 6 Trust Company in the name of Ann Olive Williams, identified as follows:
a. Certificate No. 2069 dated October 3, 1978, in the principal sum of $100,000.00.
b. Certificate No. 2070 dated October 3, 1978, in the principal sura of $100,000.00.
c. Certificate No. 1866 dated June 29, 1978, in the principal sum of $50,000.00,
[[Image here]]
*576 these being all of the certificates of deposit owned by appearers.
2. Begin at a railroad spike set at the Southwest corner of the Southwest Quarter of Southeast Quarter, Section 3, Township 23 North, Range 11 West, Springhill, Webster Parish, Louisiana, thence run South 89 degrees 27 minutes East 210 feet; thence run North 00 degrees 09 minutes East 660 feet; thence run North 89 degrees 27 minutes West 210 feet; thence run North 220 feet; thence run North 89 degrees 27 minutes West 210 feet; thence run South 00 degrees 09 minutes West 670 feet; thence run North 89 degrees 27 minutes West 35 feet; thence run South 00 degrees 09 minutes West 307.6 feet to the North line of Louisiana State Highway No. 157, thence run in a Northeasterly direction along the North line of Louisiana State Highway No. 157 to a point due South of the point of beginning; thence run North to the point of beginning, together with all improvements located thereon and rights thereto belonging, as well as all furnishings, fixtures, equipment, appurtenances, everything of value on the premises except for those items hereinafter particularly described, received by Hr. Williams in this agreement, the said property being located in the Southwest Quarter of Southeast Quarter and Southeast Quarter of Southwest Quarter, Section 3, and the Northeast Quarter of Northeast Quarter, Section 10, all in Township 23 North, Range 11 West, Webster Parish, Louisiana, it being agreed and understood that a portion of the property herein described is located in the Highway and a street, and that this description includes property previously conveyed by Mr. Williams to Mrs. Williams; which conveyance is expressly ratified and confirmed '' herein and is transferred for value, the receipt of which is expressly acknowledged, this being a part of the overall property settlement of appearers. Mrs. Williams assumes all mortgage indebtedness affecting the said property, approximately $30,000.00.
3. All of the diamonds referred to and identified as Mrs. Williams' personal diamonds, they being all of the diamonds now in her possession or under her control, and being all of the diamonds of the parties except for those that Mr. Williams receives, his personal diamonds which he has in his personal control.
4. A Mark V Lincoln automobile titled in the name of Kenneth Williams, Mr. Williams acknowledging that he has no right, title or interest therein or thereto.
5. One-half of all of the oil, gas and other minerals and rights relating thereto, including'production owned by Mr. and Mrs. Williams directly or indirectly as well as oil, gas or other minerals and rights relating thereto owned by any corporation in which appearers own stock, it being agreed and understood that Mrs. Williams will receive without further cost or consideration from each corporation one-half of its entire oil, gas and other minerals interest. This item includes one-half the benefits of all contracts or things of value pertaining to oil, gas or hydrocarbons, or their production in the broadest sense, and *577 Mr. Williams agrees, binds and obligates himself to cause such interest to be conveyed to Mrs. Williams by valid and appropriate title and warrants that it lies within his power so to do, he being the sole stockholder of the corporation involved after the subscription and execution of this agreement and the person who controls the interest of appearers in the said contracts and ventures. Mrs. Williams will pay no further consideration or charge in connection with any of these interests except that she will bear out of the cost of production according to the prior custom of appearers her one-half of the sum of $50,728.00 owed in connection with certain of these interests, except that Mrs. Williams will pay normal and usual charges attributable to the working interests received by her in the future.
*576 [[Image here]]
*577 6. Without limiting in any manner the generality of any of the foregoing, all guns except for guns received by Mr. williams herein.
7. All stock owned by Dewey E. Williams and/or Ann Olive Williams in Springhill Bank l Trust Company, all Springhill Bank & Trust Company stock.
8. East 6 acres of the South 10 acres of the Southwest Quarter of Northeast Quarter, Section 5, Township 22 North, Range 13 West, Bossier Parish, Louisiana, together with all improvements located thereon and rights thereto belonging.
9. $ oil money placed in the Springhill Bank & Trust Company "D & A Construction Company" account.
10. The DeSoto automobiles owned by appearers, one green and one black.
11. The sum of $7,500.00, representing one-half of the interest paid on a certificate of deposit deposited in the Concrete Products account.
12. All policies of life insurance on the life of Dewey E. Williams of which Ann Olive Williams is registered as the owner.
13. One-half interest in appearer's Pine Bluff, Arkansas, property, the interest of both appearers in the said lands being one-half, with Mrs. Williams receiving a one-fourth interest in the property in its entirety, more particularly described as Begin 60 feet South and 533.8 feet West of the Northeast Corner of Northeast Quarter, Section 24, Township 6 South, Range '9 West, Jefferson County, Arkansas, thence run South 44 degrees West 971.5 feet along the Southerly boundary line of Woodlawn Addition to the Southwesterly corner of SD Addition; thence run South 31 degrees 50 minutes West 400 feet; thence'run South 52 degrees 15 minutes East 331.8 feet; thence run North 31 degrees 50 minutes *578 East 400 feet; thence run North 44 degrees East 851.9 feet to the Southwesterly right of way of Grider Field Road; thence rim North 31 degrees 30 minutes Nest along SD right of way 340.35 feet to the point of beginning, containing 10 acres, together with all improvements located thereon and rights thereto belonging.
*577 [[Image here]]
*578 14. One-half right, title and interest in and to the following described property, to-wit: Lot No. 3, Lot No. 4, Lot No. 2-C and Lot No. 2-D, North Acres Addition, Unit No. 4, located in the Northeast Quarter of Southwest Quarter, Section 2, Township 23 North, Range 11 West, Springhill, Webster Parish, Louisiana, as per Map and Plat thereof on file and of record in the office of the Clerk of the District Court and Ex-Officio Recorder in and for said Parish, in Map Book 3, Page 109.
15. 3 1/3 acres of land, more or less, located in the vicinity of Canfield, Arkansas, which will be conveyed by Mr. Williams to Mrs. Williams by separate deed.
As a further part of the consideration herefor, Mrs.
Williams will receive pay or compensation of $5,000.00 per month until December 31, 1978, and will be retained on the payroll of Mr. Williams or one of his companies for this-amount, and the Travelers Hospitalization insurance coverage presently protecting Mrs. Williams shall be maintained in full force and effect for her benefit until December 31,
1978. Mrs. Williams, who has been active in the management of the business affairs of appearers, will continue to cooperate with Mr. Williams in the orderly transfer of the business to him and will perform functions of the nature heretofore performed by her, however, she is not required to go to the place of business for this purpose, and will do so only with the mutual consent of both parties.
FOR AND IN CONSIDERATION of the properties received by her herein and of the premises herein contained in their entirety, Mrs. Williams does by these presents exchange, transfer, set-over, convey and deliver unto Mr. Williams, here present and accepting the same for himself, his heirs, successors and assigns, all of *579 her right, title and interest in and to the following described property, to-wit:
*578 [[Image here]]
*579 1. All of the capital stock owned by appearers as -/property of their marital community of acguets and gains in North Louisiana Well Servicing Company,Inc. and its several divisions, this item including Mrs. Williams' interest in the businesses of she and Mr. Williams, except for those interests received by her herein, including corporate stock or proprietary interests, corporate, partnership or sole proprietorship.
2. All of Mrs. Williams' right, title and interest in and to Concrete Products of North Caddo, Inc.
3. All assets of D s A Proprietorship, except those received by Mrs. Williams as set forth hereinabove, D s A Proprietorship being a name under which appearers did proprietorship business.
4. A 1939 Ford automobile, with battery charger.
5. The following items on the premises received by Mrs. Williams:
1 Browning 30-06 .
1 Browning 16 !
1 Remington 410 1 Winchester 30-06 1 Texas Ranger Set
Assorted shotguns and shells for them, except shells for Mrs. Williams' guns.
1 44 Mag.
1 Charles Daly
1 Browning sterling silver 9 MM 1 Double barrell Assorted Colt Commerative sets 1 Winchester 20 gauge
1 set antique Watches, approximately 95
2 Remington Shotguns 1 Black suitcase
1 Briefcase.
6. Begin at the Southeast corner of the Southeast Quarter of Northwest Quarter, said Southeast Quarter of Northwest Quarter also known as Lot 3, Section 2,. . Township 23 North, Range 11 West, Webster Parish,'. . Louisiana, thence run South 89 degrees 50 minutes West 853.54 feet to the point of' beginning of the property herein described; thence continue South 89 degrees 50 minutes West 1,068.86 feet; thence run North 0 degrees 10 minutes West 700 feet to the South line of the State Line Road (Montgomery- Street); thence run North 89 degrees 41 minutes East along the South line of the said Road 1,068.86 feet .to a point bearing North 0 degrees 10 minutes West from the point of beginning; thence run South 0 degrees 10 minutes East 702.75 feet to the point of beginning, containing 17.21 acres, more, or less, *580 together with all improvements located thereon and rights thereto belonging, LESS AND EXCEPT the following described property, to-wits Begin at the Southeast Corner of Lot No. 3 (Southeast Quarter of Northwest Quarter), Section 2, Township 23 North, Range 11 Nest, Webster Parish, Louisiana, thence run South 89 degrees 50 minutes West 853.54 feet thence run North 0 degrees 10 minutes West 702.75 feet'' to the South line of State Line Road (Montgomery Drive) thence run South 89 degrees 41 minutes West 759.86 feet to the point of beginning; thence continue South 89 degrees 41 minutes West 150 feet; thence run South 2 58.41 feet; thence run East 150 feet, more or less, to a point due South of the point of beginning; thence run North 258.81 feet to the point of beginning.
*579 [[Image here]]
*580 7. Begin at the Southeast Corner of Lot No. 3, located in the South Half of the Northwest Quarter, Section 2, Township 23 North, Range 11 West, Webster Parish, Louisiana; thence run South 89 degrees 50 minutes West 653 feet to the point of beginning of the property herein described; thence continue South 89 degrees 50 minutes West 200.84 feet; thence run North 0 degrees 10 minutes West 702.75 feet, more or less to the South right of way line of the State Line Road; thence run North 89 degrees 41 minutes East along the said South right of way line 200.84 feet; thence run South 0 degrees 10 minutes East 703.28 feet, more or less, to the point of beginning, containing 3.24 acres, more or less.
8. One-half of the Pine Bluff, Arkansas, property, one-half of which was reqeived by Mrs. Williams, more particularly described in Item No. 13 hereinabove set forth.
9. A Ford Walden Tractor.
It is agreed by and between the parties that this agreement .is made without regard to the technical niceties of recorded ownership, and each of the parties hereto agrees, binds and obligates himself and herself respectively to "" cooperate with the other to fully perfect record title and ownership to each of the properties allotted to him .or her respectively herein and to execute this agreement in good faith according to their mutual intent.
[[Image here]]
*581 As a further part of the consideration herefor, Mrs.
Williams waives any and all claims, demands or rights that she has or may have to alimony, past, present or future; and as a further part of the consideration herefor, Mr. Williams agress, binds and obligates himself to pay the cost of having Mr. Ray Cook, Certified Public Accountant, prepare all tax returns of Mrs. Williams for the calendar year 1978.
Mrs. Williams forgives all of her right, title, interest or claims in and to sums payable by any of the businesses to Mr. and/or Mrs. Williams, whether or not evidenced by one or more promissory notes and all corporation or other business entities forgive all indebtedness due by Mrs. Williams directly or indirectly.
Appearers will pay the fee of his or her attorney respectively.
Mr. Williams agrees to pay all debts and claims of appearers except for those assumed by Mrs. Williams herein and except for her personal'bills for such things as utility charges and the cost of running her household.
Mr. Williams will take over the operation of the businesses at 7:00 o'clock A.M. on October 26, 1978. The parties have, agreed on the items that are to be removed from the business premises by Mrs. Williams as her property. She shall have a reasonable time in which to remove them.
Appearers each acknowledge that he and she respectively is well satisfied with this partition and settlement of their claims, each against the other, and with the subscription hereof, neither is indebted to the other in any manner for any cause, nor does either have any claim or right against the other, except for those herein set forth.
[[Image here]]